**UNITED STATES of America**

v.

**Milford BURKLEY, Appellant (Two cases).**

**Nos. 77–1663, 77–1664.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1978.

Decided Dec. 13, 1978.

Certiorari Denied March 19, 1979.
See 99 S.Ct. 1516

---

**31.** *Id.*

904

David Heller,* with whom Michael E. Geltner, Washington, D. C., (appointed by this Court) and Larry J. Ritchie, Washington, D. C., were on the brief, for appellant.

Reggie B. Walton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the court filed by McGOWAN, Circuit Judge:

McGOWAN, Circuit Judge:

In two separate indictments, appellant was charged with distributing heroin in vio-

---

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

lation of 21 U.S.C. § 841(a) (1976). After a consolidated trial on both charges, in which appellant's only defense was entrapment, the jury returned a verdict of guilty on each. On appeal, appellant presses two claims. First, he argues that the entrapment instruction given by the trial judge was improper because it did not allow the jury to consider evidence of inducement by the government. Second, he contends that consolidation of the two indictments for trial was unduly prejudicial. We conclude that neither of these claims is meritorious, but because the trial record in the District Court and the briefing on appeal reveal confusion about the applicable law on these matters, we state our views at some length.

## I

Acting upon information received from an informant, Officer Raymond D'Ambrosio, a Philadelphia police officer working with federal Drug Enforcement Administration personnel in Philadelphia, telephoned appellant in Washington, D. C. on August 10, 1976, and inquired about the possibility of purchasing heroin. There followed several additional telephone calls, some initiated by D'Ambrosio and some by appellant, concerning a possible sale of heroin by appellant to the undercover police officer. In mid-August, 1976, the two men arranged to meet in Washington; however,

a sale of heroin was not consummated at this first face-to-face meeting. Finally on September 9, 1976, D'Ambrosio made a second trip to Washington where he paid appellant $1800 for one ounce of thirty-three percent heroin. Over one and one-half months later, on October 28, appellant again approached D'Ambrosio, and the following day he offered to sell D'Ambrosio a large quantity of heroin in Phoenix, Arizona. D'Ambrosio flew to Phoenix on November 8 and, upon receiving seven ounces of ten percent heroin from appellant, immediately placed him under arrest.

Separate one-count federal indictments against appellant were respectively filed in Arizona and in the District of Columbia. After his prosecution in Arizona on the charge arising from the second sale ended in a mistrial, appellant successfully moved to have the Arizona indictment transferred to the District Court here. Over appellant's objection, that court on June 7, 1977, consolidated the Arizona and Washington indictments for trial. At the two-day trial on June 13 and 14, appellant did not deny that the sales charged in the indictment had taken place but contended rather that he should be found not guilty by reason of entrapment. The court read to the jury the entrapment instruction proffered by the Government, taken from the Devitt and Blackmar handbook,[1] rather than the "red

---

1. 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.09 (3d ed. 1977). As read to the jury, the instruction provided:

Now, ladies and gentlemen, as the attorneys have stated to you, the defense in this case is entrapment. I will now instruct you on that theory of the law, namely, entrapment.

The defendant asserts that he was a victim of entrapment as to the offenses charged in these two indictments. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment. And the law, as a matter of policy, forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment.

For example, when the government suspects that a person is engaged in the illicit sale of narcotics, it is not entrapment for a government agent to pretend to be someone else and to offer either directly or through an informer, or decoy to purchase narcotics from the suspected person.

If then the jury should find beyond a reasonable doubt from the evidence in the case that before anything at all occurred respecting the alleged offenses involved in this case the defendant was ready and willing to commit crimes such as are charged in the indictments, whenever opportunity was afforded and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the induce-

book" instruction formulated by the Bar Association of the District of Columbia,[2] which had been requested by the defense. Appellant was convicted on both counts and was sentenced to consecutive terms of five years on each count.

## II

Before explaining why we believe that both the instruction given at trial and the instruction requested by the defense are acceptable summations of the federal law of entrapment, we think it useful to examine in some detail the evidentiary posture of this case as it proceeded through trial. The

ment or persuasion of some officer or agent of the government, then it is your duty to find him not guilty.

**2.** Bar Ass'n of the District of Columbia, Criminal Jury Instructions No. 5.05 (2d Ed. 1972):

Evidence has been introduced that law enforcement officials induced the unlawful conduct with which the defendant is charged.

If an official of the Government, either acting directly or through an agent, induces an otherwise unwilling person to commit an unlawful act and the person would not have committed the act but for this inducement, that person is not criminally responsible for the act.

On the other hand, if the Government did not induce the conduct, because the defendant was predisposed or ready to commit the offense and was merely afforded an opportunity by the Government to do so, he may be found guilty, provided that the Government has proved all essential elements of the offense beyond a reasonable doubt.

The Government must prove beyond a reasonable doubt that the defendant was not induced to commit the unlawful conduct with which he is charged, because he was merely afforded an opportunity to commit the offense, being predisposed or ready to do so.

Inducement may take different forms, such as persuasion, fraudulent representations, threats or other coercive tactics, or holding out the promise or hope of reward. However, law enforcement officials are not precluded from utilizing artifice and stratagem, such as the use of decoys or undercover agents, to apprehend a person engaged in a criminal enterprise, provided that they merely afford opportunities or facilities for the commission of an offense by one already predisposed or ready to commit it.

It is for you to determine on the basis of all the evidence whether the Government has proved beyond a reasonable doubt that it did not induce the defendant to commit the of-

case is almost a prototypical example of entrapment cases in the federal courts, involving as it did drug offenses, sales made to an undercover police officer, and use of an informant;[3] indeed, the only respect in which the case before us is unlike the usual entrapment case is that the appellant here was apparently solicited by the undercover officer directly, rather than by the informant.[4] Moreover, most of the major issues which the federal appellate courts have found it necessary to address in entrapment cases were present, actually or potentially, in the case before us, including the showing which must be made by the defendant in order to place the entrapment defense be-

fense with which he is charged. If you have a reasonable doubt whether or not the defendant was induced by the activity of law enforcement officials of the Government or their agents, to commit the offense, which he would have been otherwise unwilling to commit, you must find him not guilty.

[In determining this question, you may consider evidence of the prior conduct of the defendant, including his criminal record, if any, and prior offenses of similar character he may have committed, if any. You may consider such evidence, however, solely in connection with your determination of his predisposition or readiness to commit the offense with which he is now charged. It is not evidence that he actually committed the offense with which he is now charged. Moreover, the fact, if it is a fact, that the defendant may have a criminal record or may have committed prior offenses of similar character does not require you to conclude that he had the predisposition or readiness to commit the offense with which he is now charged.]

The instruction set out above has been substantially altered and improved in the third edition of the Bar Association of the District of Columbia's Criminal Jury Instructions, published in 1978 while this appeal was under submission.

**3.** See Park, *The Entrapment Controversy,* 60 Minn.L.Rev. 163, 223 n. 198, 230 n. 223 (1976) (of 405 federal entrapment opinions between Jan. 1, 1970, and Jan. 1, 1975, 65% involved drug offenses; sales are usually to undercover officers).

**4.** See *id.* at 231 n. 226 (solicitation of drug sale is usually by private individual rather than undercover officer to whom sale is made).

fore the jury,[5] the relevance of the government agent's behavior,[6] the respective evidentiary burdens on the defense and on the prosecution,[7] and the type of evidence which may be employed by each side in attempting to sustain its burden.[8] Finally, as one would expect to be true owing to the very nature of a claim of entrapment, this was the only defense argued to the jury.[9] Thus, the record before us is unencumbered by additional or extraneous issues, and from the outset of the trial the question of entrapment received the full attention of the court, the jury, and counsel for the Government and for the defense.

The Government's case-in-chief consisted of testimony from D'Ambrosio, DEA agents who witnessed the sales charged in the indictments, and DEA forensic chemists who analyzed the substances sold to D'Ambrosio, as well as several exhibits. On cross-examination of D'Ambrosio, appellant's counsel established that the informant in the case had been paid by the DEA for his cooperation and had not yet been tried on a charge against him in Philadelphia for which he had been arrested just prior to the time he gave appellant's name to DEA officials. Appellant's counsel also questioned D'Ambrosio at length about statements the officer admitted making to appellant which might be interpreted as inducements or pressures upon appellant to make the sales.[10]

After the Government concluded its case-in-chief, the court denied appellant's motion for a judgment of acquittal but did rule that, were the case to go to the jury at that point, an instruction on entrapment would be warranted. Tr. (June 13) at 125. The court indicated that, in his cross-examination of D'Ambrosio, appellant's counsel had come forward with sufficient evidence of inducement to preclude a ruling that the entrapment defense failed as a matter of law; rather, whether appellant was a victim of entrapment was a question for the jury to decide.

The only witnesses called by the defense were the informant, who was examined as a hostile witness, and appellant's father, who testified that he had allowed the informant to stay in his home for several months and had asked him to leave when it was suspected that he had stolen some coins and other items. In questioning the informant, appellant's counsel sought to cast doubt on his character and thus on his claim that appellant was a "lieutenant" in the heroin trade. Tr. (June 13) at 165.

At the close of the defense evidence, the court reiterated its conclusion that "there is enough evidence to justify at least the instruction on entrapment," Tr. (June 13) at 186. The Government thereupon announced that it would present rebuttal evidence that appellant had distributed heroin on occasions other than those charged in the indictments, but, because of immunity prob-

---

**5.** See e. g., *United States v. Borum*, 189 U.S. App.D.C. 266, at 269–271, 584 F.2d 424 at 427–429 (1978); *United States v. Boone*, 177 U.S. App.D.C. 265, 266–268, 543 F.2d 412, 413–15 (1976).

**6.** See, e. g., *Pierce v. United States*, 414 F.2d 163, 168–69 (5th Cir. 1969); *Kadis v. United States*, 373 F.2d 370, 374 (1st Cir. 1967).

**7.** See, e. g., *Johnson v. United States*, 115 U.S. App.D.C. 63, 65, 317 F.2d 127, 129 n. 2 (1963); *United States v. Sherman*, 200 F.2d 880, 882–83 (2d Cir. 1952).

**8.** See, e. g., *United States v. Brown*, 185 U.S. App.D.C. 252, 253, 567 F.2d 119, 120 (1977); *United States v. Anglada*, 524 F.2d 296, 298–300 (2d Cir. 1975).

**9.** See *United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975) (while defendant may both

deny committing the offense and claim entrapment, "the high risks to him make it unlikely as a strategic matter that he will choose to do so"); Park, *supra* note 3, at 257, n. 308; *cf.* *Hansford v. United States*, 112 U.S.App.D.C. 359, 361, 303 F.2d 219, 221 (1962) (en banc) ("It was consistent with defendant's denial of the transaction to urge that if the jury believed it did occur the government's evidence as to how it occurred indicated entrapment.").

**10.** E. g., "[In a telephone call] I told him that I had committed myself to other people who wanted to come in on the deal," Tr. (June 13) at 77A; "[I said] I thought you were going to be able to do this thing for me. I am disappointed that you were unable to do so," Tr. (June 13) at 78.

lems, the Government in the end decided not to present these additional witnesses. Tr. (June 13) at 186–93.

In its closing argument, the defense again conceded, as it had throughout the trial, that the only issue in the case was whether the appellant had been entrapped. Tr. (June 14) at 9. Appellant's counsel argued that the informant's motive and D'Ambrosio's interaction with appellant indicated that appellant had been "induced" and was not "predisposed" to make the sales, leaving it to the court to define the meaning and relevance of these terms. The prosecution, contrarily, argued that the ease with which appellant obtained heroin, the high quality of the drug he obtained, the informant's testimony that appellant was a "lieutenant" in heroin dealing, and appellant's reinitiation of contact with D'Ambrosio after the first sale in September supported the conclusion that appellant was predisposed to make the sales charged in the indictment.

### III

Thus it appears that throughout the trial the major focus of the defense was on the motive, actions, and statements of the government agents involved, while the prosecution focused on the behavior of appellant. Similarly, on this appeal, appellant argues that, in deciding whether there has been entrapment, the jury must be instructed to consider whether the defendant was "induced" by the government to commit the crime, while appellee argues that the ultimate question before the jury in an entrapment case is whether the defendant was "predisposed" to commit the crime. We think that a large measure of the disagreement between appellant and appellee is a matter of semantics, resulting particularly from the ambiguity of the term "inducement" and confusion over who bears the burden of proving or disproving the elements of entrapment.

### A.

The Supreme Court has written three major opinions on the defense of entrapment. In each the Court has consistently explained that the ultimate fact to be determined by the jury is whether the defendant was "predisposed" to commit the crime with which he is charged. The most recent of these decisions is *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In *Russell,* the Court described at some length the history of the entrapment defense in the federal courts, and we need not repeat that description here. Suffice it to say that throughout this history a significant minority of the Supreme Court has disagreed with the majority's focus on predisposition. In *Sorrells v. United States,* 287 U.S. 435, 453–59, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Mr. Justice Roberts, joined by two other Justices, argued in concurrence that the defense of entrapment should prevail where it is shown that the crime was "instigated" by government agents. Under this view, the nature of the inducements used by the government would be dispositive of the entrapment issue. In *Sherman v. United States,* 356 U.S. 369, 378–85, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), Mr. Justice Frankfurter contended, concurring for himself and three others, that a defendant should be found not guilty by reason of entrapment when the police conduct falls below the standards implicit in the "proper use of governmental power," *id.* at 382, 78 S.Ct. 819 (Frankfurther, J., concurring). In *Russell,* four dissenters again espoused the views put forth by Justices Roberts and Frankfurter,[11] but the majority opinion adhered to the emphasis on predisposition.

*Russell* did appear to leave open the possibility that the dissenters' viewpoint—that government conduct might be so impermissible that it would, in and of itself, constitute entrapment—could, in an appropriate case, prevail. *See* 411 U.S. at 432, 93 S.Ct. 1637. In the recent decision of *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646,

---

11. *See* 411 U.S. at 436, 93 S.Ct. 1637 (Douglas, J., dissenting); *id.* at 439, 93 S.Ct. 1637 (Stewart, J., dissenting).

48 L.Ed.2d 113 (1976), a bare majority concluded that government provision of contraband does not constitute entrapment *per se,* but two members of this majority refused to rule out the possibility that, where police conduct has been sufficiently outrageous, due process principles might prevent conviction even though the defendant was predisposed to commit the crime.[12]   The three remaining Justices participating in *Hampton* argued the minority position of *Sorrells, Sherman,* and *Russell,* and also contended that conviction should be barred as a matter of law where a government agent supplies the defendant with the contraband he is accused of selling.[13]

■ For our purposes, the importance of *Hampton* is that once again five Justices accepted the view that, in those instances in which "[p]olice overinvolvement in crime" does not "reach a demonstrable level of outrageousness," [14] predisposition is the dispositive issue.  We therefore adhere to the view we expressed in 1962 that the prosecution defeats a claim of entrapment "by showing [beyond a reasonable doubt] predisposition or readiness on the part of the accused to commit the offense." *Hansford v. United States,* 112 U.S.App.D.C. 359, 364, 303 F.2d 219, 224 (1962) (en banc).

### B.

■ It remains true, however, that while predisposition is dispositive, government inducement is not irrelevant in entrapment cases.  In order to raise the defense, the defendant must show that a government agent [15] played some effective role in the commission of the crime.  In discussing the defendant's burden in raising the entrapment defense, this court has quoted approvingly the general theory of entrapment stated by Judge Learned Hand:

[T]wo questions of fact arise [in entrapment cases]: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense.  On the first question the accused has the burden; on the second the prosecution has it.

*United States v. Sherman,* 200 F.2d 880, 882–83 (2d Cir. 1952), *quoted in Hansford, supra,* 303 F.2d at 224.

The Hand approach to the entrapment defense needs, we think, some explanation.  First, as is further explored below, the word "inducement" is not without its ambiguous aspects.  Judge Hand defined it very broadly to include "soliciting, proposing, initiating, broaching, or suggesting," 200 F.2d at 883, that the crime be committed.  This definition of inducement "goes simply to the Government's initiation of the crime and not to the degree of pressure exerted." *United States v. Riley,* 363 F.2d 955, 958 (2d Cir. 1966).  Thus, Judge Hand apparently contemplated that a defendant could raise the entrapment defense upon a sufficient showing that the government solicited or initiated the crime.

This view, however, has met significant opposition in the courts of appeals.  Some circuits, while retaining Judge Hand's two-part inquiry, have adopted a narrower definition of inducement under which mere government solicitation or initiation is, without more, insufficient to raise the entrapment defense.  *See United States v. Christopher,* 488 F.2d 849, 850–51 (9th Cir. 1973) (repudiating broad language in *Notaro v. United States,* 363 F.2d 169, 174 n. 6 (9th Cir. 1966)); *Pierce v. United States,* 414 F.2d 163, 165–69 (5th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969).  Abandoning altogether Hand's two-part inquiry and his definition of induce-

---

**12.**  425 U.S. at 491, 96 S.Ct. 1646 (Powell, J., joined by Blackmun, J., concurring).

**13.**  425 U.S. at 495, 96 S.Ct. 1646 (Brennan, J., joined by Stewart and Marshall, JJ., dissenting).

**14.**  425 U.S. at 495 n. 7, 96 S.Ct. at 1653 (Powell, J., concurring).

**15.**  Persuasion, seduction, or cajoling by a private party does not qualify as entrapment even if the defendant was not predisposed to commit the crime prior to such pressure.

ment, the First and Fourth Circuits have adopted a unitary standard focusing on the defendant's predisposition:

> If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness.

*Kadis v. United States,* 373 F.2d 370, 374 (1st Cir. 1967); *accord, United States v. DeVore,* 423 F.2d 1069, 1071 (4th Cir. 1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971). Even the Second Circuit, which still adheres to Hand's two-part inquiry and his definition of inducement, has held that where a defendant has demonstrated mere government solicitation or initiation, the prosecution must bear the burden of producing evidence of the defendant's predisposition, but, if the prosecution discharges that burden, the defendant is *not* entitled to an entrapment instruction *unless* he then comes forward with some evidence indicating a lack of predisposition. *United States v. Riley, supra,* 363 F.2d at 958–59; *accord, United States v. Watson,* 489 F.2d 504, 509 (3d Cir. 1973).

Underlying this opposition to Judge Hand's apparent view that the entrapment defense is raised upon demonstrating mere government solicitation or initiation is, we think, the Supreme Court's emphasis in entrapment cases on protecting the otherwise unpredisposed defendant, rather than on supervising police practices.[16] *See* Part III.A *supra.* In light of this expressed policy goal, we believe that the opposition to Judge Hand's view rests on the not unreasonable behavioral assumption that "solicitation by itself is not the kind of conduct

that would persuade an otherwise innocent person to commit a crime." *United States v. DeVore, supra,* 423 F.2d at 1071.

■ Our cases also require a defendant seeking to raise the entrapment defense to demonstrate something more than mere solicitation. Although this court apparently has never determined whether solicitation standing alone constitutes "inducement" under the first part of Judge Hand's two-part theory of entrapment, *see United States v. Borum,* 189 U.S.App.D.C. at 270, 584 F.2d at 428 (1978), we have adopted a procedural mechanism designed to ensure that a defendant show more than mere solicitation to obtain an entrapment instruction. *Id.* at 271, 584 F.2d at 429; *United States v. Boone,* 177 U.S.App.D.C. 265, 267–268, 543 F.2d 412, 414–15 (1976).

This procedural mechanism was devised in *United States v. Riley, supra,* where Judge Friendly sought to reconcile those cases affirming convictions on the ground that submission of an entrapment instruction was not required even though government participation had been shown with other cases condemning a failure to submit the issue to the jury even though the evidence on predisposition strongly favored the prosecution. In Judge Friendly's view, the unifying principle was that:

> [E]ven when inducement [that is, government solicitation or initiation] has been shown, submission to the jury is not required if uncontradicted proof has established that the accused was "ready and willing without persuasion" and to have been "awaiting any propitious opportunity to commit the offense." In such cases there is no real issue for the jury even though in strict theory it might create one by speculating that the agents had

16. In *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), Justice Harlan, speaking for the Court, discussed the showing required to raise the entrapment defense in light of its underlying purpose:

> The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems in-

volved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged.

*Id.* at 434–35, 83 S.Ct. at 1385 (emphasis in original).

found the defendant less willing than they said. On the other hand, the production of any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be.

363 F.2d at 959. This rule creates a procedural mechanism whereby if the defendant comes forward with some evidence of government solicitation or initiation, the prosecution then assumes the burden of coming forward with evidence of the defendant's predisposition. If the prosecution discharges that burden, then the burden of production shifts again back to the defendant requiring him to come forward with any evidence of his lack of predisposition. Absent such evidence, the defendant is not entitled to an entrapment instruction even though he has demonstrated government solicitation or initiation.

It would be difficult to imagine a more cumbersome procedural mechanism, in an area of the law already fraught with confusion, than that created in *Riley* and adopted by this court in *Boone* and *Borum*. In large measure, the complexity of *Riley* stems from the fact that the Second Circuit, though unwilling to send the entrapment issue to the jury upon a mere showing of government solicitation or initiation, nevertheless has refused to abandon Judge Hand's broad definition of inducement.

The practical effect of *Riley* is to require something more than government solicitation or initiation, but to do so in terms of predisposition rather than in terms of inducement. *See Kadis v. United States, supra,* 373 F.2d at 373 n. 4.

In apparent recognition of the fact that *Riley* is exceedingly complex and the fact that this court, unlike the Second Circuit, has not committed itself to Judge Hand's broad definition of inducement, the drafters of the new "red book" instruction on entrapment have formulated a dramatic simplification of the law in this Circuit by endorsing a definition of inducement that in practice will yield the same results as *Riley* without its involuted procedural mechanism. Though retaining Judge Hand's two-part analysis of entrapment,[17] the new instruction includes a narrower definition of inducement:

> Inducement by law enforcement officials may take many forms including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement.

Bar Ass'n of the District of Columbia, Criminal Jury Instructions No. 5.05 (3d ed. 1978).[18] The new instruction thus requires

---

17. The new instruction states:

> In summary then, if you find no evidence that the government induced the defendant to commit the crime with which he is charged here, there can be no entrapment. On the other hand, if you find some evidence that the defendant was induced to commit the offense with which he is charged, you must then go on to consider if the defendant was predisposed to commit such an offense. If you find beyond a reasonable doubt that the defendant was predisposed to commit such an offense, then you should find that the defendant was not a victim of entrapment. However, if the evidence in the case leaves you with a reasonable doubt whether the defendant was predisposed to commit the offense, then you must find him not guilty.

Bar Ass'n of the District of Columbia, Criminal Jury Instructions No. 5.05 (3d ed. 1978).

18. It is clear, however, that not all "fraudulent representations" constitute "inducement," for the new "red book" instruction further provides that:

> Law enforcement officials are not precluded from utilizing artifice, stealth and strategem [*sic*], such as the use of decoys and undercover agents, in order to apprehend persons engaged in criminal activities, provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it. [They may properly make use of undercover operations, in which they assume false names and false appearances. They may properly assume the roles of members of criminal organizations. They may properly offer or give to the defendant the money which is involved in the commission of the crime itself. And they may properly instigate the offer of money to the defendant.]

a defendant seeking to raise the entrapment defense to come forward with some evidence of government conduct that would create a risk of causing an otherwise unpredisposed person to commit the crime charged. *Cf.* Model Penal Code § 2.13(1)(b) (Official Draft 1962). We believe that this new definition of inducement will yield essentially the same protection to a criminal defendant as that afforded by *Riley* under which the defendant must show solicitation or initiation *and* must present some evidence indicating a lack of predisposition. The significant advantage of the new instruction is that, without altering substantive results, it renders unnecessary the procedural complexities of *Riley*. This is, we think, a useful development.

The second respect in which the Hand approach to entrapment needs some explanation relates to the defendant's evidentiary burden in obtaining an entrapment instruction and his ultimate burden of proof. Here the law in this Circuit is well-settled. In *United States v. Boone, supra,* 543 F.2d at 414, we enunciated the guiding principle in determining whether an entrapment instruction should issue: "In passing on the necessity for an entrapment instruction the court should [consider] the evidence in [a] light most favorable to the defendant." In addition, we have indicated that the trial judge must consider the evidence adduced by both the defendant *and the prosecution:*

> Of course, when the evidence of the prosecution itself . . . raises the issue of entrapment, that is, the issue of inducement, as we use that term, the accused himself need not assume the burden [of demonstrating inducement] . . . . Whenever the defense is asserted on evidence which gives rise to a factual issue of inducement by the Government an instruction on entrapment should be given if requested, regardless of the source from which the evidence of such inducement arises.

*Johnson v. United States,* 115 U.S.App.D.C. 63, 65 n.2, 317 F.2d 127, 129 n. 2 (1963).

■ Thus, with respect to the evidentiary threshold in obtaining an entrapment instruction under the current law, the trial judge must instruct the jury on entrapment if there is any evidentiary foundation for a finding of government inducement, and if, assuming the government then has discharged its burden of coming forward with evidence of predisposition, there is any evidence negating the defendant's predisposition. *United States v. Borum, supra,* 189 U.S.App.D.C. at 271, 584 F.2d at 429; *United States v. Boone, supra,* 543 F.2d at 414–15. The new "red book" instruction, as we indicated above, simplifies the trial judge's determination. Under the new instruction, the trial judge must give an instruction if there is any foundation in the evidence, when viewed in a light most favorable to the defendant, for a finding of "inducement"—that is, for a finding of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, pleas based on need, sympathy, or friendship, or any other government conduct that would create a risk of causing an otherwise unpredisposed person to commit the crime charged.

■ While it is appropriate to place on the defendant the ultimate burden of showing government inducement of the crime, and thus the possibility of entrapment, *Hansford v. United States, supra,* 303 F.2d at 223–24, we do not think that the defendant should bear the burden of proving inducement by a preponderance of the evidence. His burden in requiring the prosecution to prove predisposition beyond a reasonable doubt is met by convincing the jury that there is *some* evidence [19] of government "inducement" as that term is defined

19. *See United States v. Braver,* 450 F.2d 799, 805 (2d Cir. 1971), *cert. denied,* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972); *United States v. DeVore, supra,* 423 F.2d at 1071; *Kadis v. United States, supra,* 373 F.2d at 374; *cf. Lopez v. United States, supra,* 373 U.S. at 434–35, 83 S.Ct. at 1385 ("Thus before the issue of

entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged.").

above.[20] The prosecution is free to rebut the defendant's evidence of inducement, and the jury, if it finds no evidence of inducement, should not reach the question of the defendant's predisposition. Contrarily, if the evidence supports a finding of inducement as a matter of law, the trial judge should withhold the inducement question from the jury, requiring it to determine only whether the prosecution has proved predisposition beyond a reasonable doubt. Of course, if the prosecution has failed to adduce sufficient evidence of defendant's predisposition to present a jury question, the trial judge, assuming that defendant has discharged his burden of showing inducement, must find that there is entrapment as a matter of law. Otherwise, the trial judge, once he has found that there is sufficient evidence to warrant an instruction as described above, may not withhold an instruction or otherwise refuse to submit the entrapment question to the jury, however unreasonable he would consider a verdict in favor of the defendant to be. *United States v. Borum, supra,* 189 U.S.App.D.C. at 271, 584 F.2d at 429; *United States v. Boone, supra,* 543 F.2d at 414–15; *United States v. Anglada,* 524 F.2d 296, 298 (2d Cir. 1975); *United States v. Riley, supra,* 363 F.2d at 959.[21]

Applying these principles to the case before us, it appears that the defense of entrapment was raised during the Government's presentation of its case in chief, when D'Ambrosio testified that he *repeatedly* requested appellant to sell heroin to him, and that he made other statements to appellant that might be interpreted as putting further pressure on him to engage in a heroin transaction. Under the *Riley* formulation, the trial judge correctly issued an entrapment instruction because (1) D'Ambrosio's repeated requests constituted sufficient evidence of inducement and (2) the agent's statements possibly imposing pressure upon the defendant constituted sufficient evidence of defendant's lack of predisposition. *See United States v. Borum, supra.* The repetition of the requests, together with the other statements, also would suffice to require an instruction under the definition of inducement in the new "red book" instruction.

### C.

As the foregoing discussion suggests, the precise nature and scope of the government inducement is relevant not only in raising the issue of entrapment; it may also shed light on the ultimate issue in controversy— whether the defendant was predisposed to commit a crime of the nature charged.

20. *See* pages ———–——— of 192 U.S.App.D.C., pages 913–914 of 591 F.2d, *supra.*

21. It is well settled that when the evidence raises the issue of entrapment, it is a jury question. *See Sherman v. United States, supra,* 356 U.S. at 376–77, 78 S.Ct. 819; *Sorrells v. United States, supra,* 287 U.S. at 452, 53 S.Ct. 210. Explaining why this is so, Judge Friendly observed that:

> [Entrapment cases] frequently present an issue of credibility as between the agent and the defendant, . . . ; resolution of such an issue is peculiarly within the jury's province. If it credits the defendant's story in whole or in part, the ensuing question of whether the Government has gone so far in causing the criminal conduct as to take the case outside the definition of the crime and to render punishment an act of injustice, is also highly suitable for determination by a jury, representing "the voice of the country."

*United States v. Riley, supra,* 363 F.2d at 958. Thus, once the trial judge has concluded that there is sufficient evidence to warrant an entrapment instruction, he must submit the question to the jury, even if he would regard a finding of entrapment as unreasonable.

Under the minority view of the entrapment defense, *see* Part III.A *supra,* the trial judge would play a much broader role in resolving entrapment claims. In his dissenting opinion in *United States v. Russell, supra,* 411 U.S. at 441, 93 S.Ct. 1637, 1647, Justice Stewart noted that: "Under [the minority] approach, the determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury." *Accord, Hampton v. United States, supra,* 425 U.S. at 497, 96 S.Ct. at 1653 (Brennan, J., dissenting). This broader role, though appropriate under the minority view of entrapment with its focus on ensuring the proper use of government power, is inappropriate under the majority view with its focus instead on protecting the otherwise unpredisposed defendant. *See United States v. Riley, supra.*

**916**

One of the complaints about the federal entrapment defense is that stating the ultimate issue in this manner logically requires the defense to fail, because the very fact that the defendant did commit the crimes means, barring duress,[22] that he was predisposed to do so, whether or not he was making any active moves to accomplish that end.[23] We think it clear, however, that by "predisposed" is meant not that the defendant on his own might, under some conceivable set of circumstances, commit the crime, but that he is presently *ready and willing* to commit the crime. As we indicated in *Hansford, supra,* 303 F.2d at 222, the predisposition which must be shown by the prosecution is a "state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged."

Clearly, one way of proving predisposition is to show that the defendant responded affirmatively to less than compelling inducement by the government agent. The limited character of the participation in the crime by the agent may convince the jury of predisposition on the part of the defendant. If, on the other hand, the accused did not respond affirmatively until after substantial pressure or threats by the government agent, then the prosecution generally must introduce additional evidence in order to convince the jury of predisposition. For instance, in the case at bar, that the defendant did not deny knowledge of the heroin trade, that he voluntarily remained in contact with D'Ambrosio, that he was initially willing to discuss the possibility of a sale to the agent, and that he subsequently initiated the sale of narcotics in Phoenix, suggests that he was disposed to commit the crime of distributing heroin prior to any action on the part of the government.

Thus the behavior of the government agent is one of many factors potentially bearing on predisposition. Where there is minimal government inducement, the prosecution may present this as evidence of the defendant's initial proclivity to commit the offense; if the government agent has exerted more severe pressure on the defendant, the defense may present this as a rebuttal to the prosecution evidence of predisposition.

That the nature of the government's participation in the crime is relevant to the issue of predisposition does not alter the basic proposition that it is only predisposition which the prosecution must prove beyond a reasonable doubt. It need not, though it may, prove that there was no government inducement of or participation in the crime whatsoever.

### IV

Having examined the elements of the defense of entrapment in the federal courts, we believe that the issue relevant thereto in this case can be disposed of rather quickly. Appellant contended at trial, and argues on this appeal, that the entrapment instruction given by the trial court "erroneously removes inducement as an element of the defense of entrapment to be considered by the jury," Appellant's Reply Brief at 1. The specific language objected to is found in the last paragraph of the Devitt and Blackmar instruction given to the jury:

> [I]f the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, *apart from the inducement or persuasion of some officer or agent of the government,* then it is your duty to find him not guilty. (Emphasis added.)

The standard "red book" instruction proffered by appellant on the other hand, specifically directs the jury to consider inducement:

---

22. The defense of duress is even more limited than that of entrapment, requiring threat of immediate physical harm as well as nondisposition.

23. *See, e. g.,* Mikell, *The Doctrine of Entrapment in the Federal Courts,* 90 U.Pa.L.Rev. 245, 251–52 (1942).

It is for you to determine . . . whether the Government has proved beyond a reasonable doubt that *it did not induce the defendant to commit the offense with which he is charged.* (Emphasis added.)

The Government's position on appeal is precisely contrary to appellant's. It contends that the "red book" instruction is erroneous in requiring that the prosecution must prove beyond a reasonable doubt that the defendant was not induced by the government to commit the crime.

Appellant's argument is based on a plain misreading of the Devitt and Blackmar instruction. The instruction does not tell the jury to ignore inducement in determining predisposition. To the contrary, it requires the jury to take account of the effect of government inducement on the defendant's disposition to commit the crime. The jury is told that it is not enough that the defendant was disposed to commit the crime after the government agent induced him to do so; rather, he must have been predisposed to commit the crime. We think this portion of the Devitt and Blackmar instruction is an accurate and unambiguous statement of the

law.[24] Accordingly, we reject appellant's claim that the jury was incorrectly instructed on the issue of entrapment.

Appellee's objection to the "red book" instruction has greater merit. If the jury were to interpret the word "inducement" in the manner in which we have defined it in this opinion, then the instruction would be clearly erroneous. Inducement in the sense we have used it, as the threshold requirement of the entrapment defense, refers to government persuasion, harassment, or other pressure on the defendant to commit the crime, and we have explained that the prosecution need not disprove such government involvement in order to defeat the defense of entrapment. As used in the instruction, however, the term "inducement" obviously refers also to the ultimate issue of predisposition.[25] It is apparent from other sections of the instruction that, under its definition of inducement, *only a person who is not predisposed* to commit the crime can be "induced" to commit it by the government.[26] Moreover, immediately after the sentence to which the Government objects, the instruction again implicitly equates being "induced" with

---

24. Prior to 1974, the last paragraph of the Devitt and Blackmar instruction read:

> [I]f the evidence in the case should leave you with a reasonable doubt whether the Defendant had the previous intent or purpose to commit any offense of the character here charged, and *did so only because he was induced or persuaded by some officer or agent of the Government,* then it is your duty to acquit him. (Emphasis added.)

While this version may be an acceptable statement of the law, we prefer the current version. The version stated in this footnote introduced a confusing and unnecessary "sole causation" requirement in addition to the requirement of predisposition.

The Devitt and Blackmar instruction, either in its present or previous form, was cited without comment in *United States v. Russell, supra,* 411 U.S. at 427 n. 4, 93 S.Ct. 1637, and has been approved by five courts of appeals. *See United States v. Gurule,* 522 F.2d 20, 25 (10th Cir. 1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976); *United States v. Gardner,* 516 F.2d 334, 347–48 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975); *United States v. Pena-Ozuna,* 511 F.2d 1106, 1107–08 (9th Cir.), *cert. denied,* 423 U.S. 850, 96 S.Ct. 92, 46 L.Ed.2d 73 (1975);

*United States v. Pollard,* 483 F.2d 929, 932 (8th Cir.), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974); *United States v. Watson,* 489 F.2d 504, 506 (3rd Cir. 1973).

25. We recognize that confusion over the meaning of the term "inducement" is not limited to the drafters of the "red book" instruction or to the parties in this case. Appellate opinions have not used the term consistently either. For instance, in *United States v. Russell,* the majority opinion at one point quotes Judge Hand and uses the term in the sense he used it, to refer broadly to government participation in the crime, *see* 411 U.S. at 434, 93 S.Ct. 1637, and on the next page states that a defendant who is "induced to commit [a crime] by the Government" cannot be criminally punished for this action, *see id.* at 435, 93 S.Ct. 1637.

26. *See, e. g.,* note 2, *supra,* at ¶ 3 ("if the Government did *not induce* the conduct, *because* the defendant was *predisposed* . . ."); ¶ 4 ("[t]he Government must prove . . . that the defendant was *not induced* . . ., *because* he was merely afforded an opportunity to commit the offense, being *predisposed or ready* to do so") (emphasis added).

"otherwise unwilling to commit." We therefore conclude that, if the jury had been given the "red book" instruction, it would not have received the erroneous impression that the prosecution had to prove there was no government participation in the crime.

We note that the somewhat confusing manner in which the word "inducement" was used in the instruction discussed above has been eliminated in the most recent (1978) version of the "red book" published by the Bar Association of the District of Columbia. *See* pages —— – —— of 192 U.S.App.D.C., pages 913–914 of 591 F.2d, *supra.* The new version clearly separates the issues of inducement and predisposition, using the term "inducement" in reference to government involvement in the crime rather than to the ultimate issue of predisposition. The final paragraph of the new instruction [27] is a particularly clear statement of the law on entrapment.

## V

Appellant also challenges the consolidation of the Arizona and Washington, D.C. indictments for trial. The matter of consolidation was raised by the court at a status hearing, and the transcript of that hearing indicates that both counsel and the court were under the impression that, if the cases were not consolidated, evidence of the second sale (in Arizona) could not be admitted in a separate trial on the charge arising from the first sale, apparently because such after-the-fact evidence would be either irrelevant, or at least more prejudicial than relevant. In its order consolidating the cases for trial, the court justified the consolidation because it "appear[ed] that the

27. *See* note 17 *supra.*

28. *See* notes 31 & 32 *infra.*

29. The trial judge stated at the status hearing that he thought the cases should be consolidated, "looking at it strictly from the viewpoint of conserving judiciality [*sic*]." Tr. (May 31) at 6.

30. The judge stated to the prosecutor, "[The inadmissibility of the later crime in a separate trial for the first] is why I think you should be eager to consolidate." Tr. (May 31) at 5.

acts charged in the indictments constitute parts of a common scheme or plan," citing Rules 8 and 13 of the Federal Rules of Criminal Procedure. Those rules allow consolidation when the charges are similar or stem from related acts or transactions.[28] The defendant objected to consolidation, apparently relying on Rule 14, which provides for separate trials when consolidation would be prejudicial.

From the foregoing it could be inferred that the trial judge assumed that, if joinder of offenses is permissible under Rules 8 and 13, such joinder may be ordered *without* regard to the Rule 14 concern that prejudice to the defense (or prosecution) may result therefrom.[29] More specifically, it could be inferred that the court believed that the inadmissibility of evidence of each crime in a separate trial on the other crime has no bearing on whether the two crimes may be tried together.[30]

Both of these assumptions are erroneous. However, because consolidation would clearly have been proper under the standard which should have been invoked by the court below, there is no cause to reverse appellant's convictions and remand the cases for a new trial.

## A.

Rule 13 of the Federal Rules of Criminal Procedure provides that indictments may be consolidated for trial if the offenses charged in them could have been joined in a single indictment.[31] Joinder of offenses in a single indictment is governed by Rule 8(a), which states that joinder is permissible if the offenses (1) are of the same or similar

31. Fed.R.Crim.P. 13:

The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions constituting parts of a common scheme or plan.[32]

■ It is evident that Rules 8(a) and 13 address only the question of when joinder or consolidation would result in a conservation of judicial resources. Because other considerations are also relevant to a decision on consolidation, the wording of the rules is permissive; all offenses which could be tried together thereunder need not be. Rule 14 provides that

> [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses . . . the court may order . . . separate trials of counts . . . or provide whatever other relief justice requires.

Thus, "[i]f the defendant makes a timely motion under Rule 14 and shows prejudice, the court should either order an election by the Government or grant separate trials." *Drew v. United States,* 118 U.S.App.D.C. 11, 13, 331 F.2d 85, 87 (1964)

Of the several types of prejudice to the defendant which may result from consolidation,[33] the only one relevant here is "criminal propensity" prejudice. The fear is that when two or more crimes are tried together, and the evidence of one is greater than that of the other, the jury may infer that because the defendant appears to have committed at least one of the crimes, he has a propensity to commit crime, or at least crimes of the nature charged. The jury may treat this assumed criminal disposition. of the defendant as evidence that he com-

mitted the other crime(s) with which he is charged.

■ The possibility of criminal propensity prejudice, which most often arises when the prosecution in a single count trial proposes to admit evidence of crimes other than that for which the defendant is being prosecuted, has been addressed by the Federal Rules of Evidence. Following the well-established common law principle, the Rules provide:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

Fed.R.Evid. 404(b), 56 F.R.D. 183, 219 (1972). Despite this general principle, evidence of other crimes is admissible when introduced not to show criminal disposition but

> for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Id.* Even when admissible, however, evidence of other crimes must be excluded if the danger of criminal propensity prejudice substantially outweighs the probative value of the evidence. Fed.R.Evid. 403.[34]

■ There is no reason to suspend the proscriptions in Rule 403 and 404(b) in cases where separate crimes are consolidated for joint trial. Thus when a defendant objects to consolidation that would be permissible under Rules·8(a) and 13 or moves for separate trials, under Rule 14, because of "criminal propensity" prejudice, the trial

---

**32.** Fed.R.Crim.P. 8:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**33.** Appellant did not argue below, and does not argue on appeal, that consolidation was prejudicial because he was confounded in presenting separate defenses, or because the jury was un-

able to keep evidence of one crime distinct from evidence of the other, or because the charging of several crimes engendered in the jury a latent feeling of hostility, *see Drew v. United States, supra,* 118 U.S.App. D.C., at 14, 331 F.2d at 88.

**34.** Fed.R.Evid. 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

court should initially be guided by whether evidence of each crime could be admitted in a separate trial of the other(s) under Federal Rules of Evidence 403 and 404(b). If the answer is affirmative and there appears no other cause of prejudice to either side from consolidation, the consolidation may go forward.[35]

## B.

Because we think that evidence of each of the sales would clearly have been admissible in a separate trial on the charge growing out of the other sale—applying either of two exceptions to the general prohibition against admission of evidence of other crimes—we reject appellant's claim of improper consolidation.

As mentioned above, the general "other crimes" prohibition is in fact an absolute prohibition on admission of evidence of other crimes for one specific purpose: "prov[ing] the character of a person in order to show that he acted in conformity therewith" on a particular occasion. Fed.R. Evid. 404(b). See Advisory Committee Notes, 56 F.R.D. 183 at 221. Evidence of other crimes offered for any other purpose is not automatically inadmissible under Rule 404(b); rather, it is subject to the probative-prejudice test of Rule 403.

While Rule 404(b) lists certain of these other purposes, such as motive and intent, this list is not exhaustive, see id. One allowable purpose which traditionally

has been stated as an exception to the "other crimes" rule, but which was not included in the Rule 404(b) list of examples, is to show the existence of "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other." Drew v. United States, supra, 118 U.S.App.D.C. at 16, 331 F.2d at 90. See also R. Lempert & S. Saltzburg, A Modern Approach to Evidence 218–19 (1977). Examination of the record in this case makes it clear that the Government in its case-in-chief presented the two heroin sales between appellant and the undercover police officer, D'Ambrosio, as part of a common plan or scheme, in which appellant would be a continuing source, and the undercover officer a continuing recipient, of heroin.[36] Although we can conceive of situations in which the parts of a common scheme or plan are more related than were the two crimes with which appellant was charged, we have no doubt that the evidence in this case fits within the common scheme exception to the "other crimes" rule. Moreover, the probativeness, as part of a common scheme, of evidence of each crime in a trial on the other crime would have outweighed "unfair prejudice" to the appellant resulting from its admission under Rule 403.

We note at this point that the presence of a common scheme or plan not only provides a permissible reason to introduce evidence of other crimes under Rule 404(b) of the

---

**35.** Even if evidence of each crime would not be admissible in separate trials, consolidation *may* nevertheless be proper "when the evidence of each crime is simple and distinct," so that the jury, on its own or through a limiting instruction, will clearly realize that the evidence of each crime is irrelevant to the other and Rules 403 and 404(b) will be honored. See Drew v. United States, supra, 118 U.S.App.D.C. at 17, 331 F.2d at 91; cf. United States v. Foutz, 540 F.2d 733, 738 (4th Cir. 1976). Given our resolution of the issue of admissibility in separate trials, we need not reach this further issue.

**36.** For reasons not explained, the opening statements of counsel are excluded from the transcript of the District Court proceedings. See Tr. (June 13) at 3. The Government's closing argument, however, includes the theme of common scheme which was evident from the

questioning of witnesses. See, e. g., Tr. (June 14) at 6:

> [A] lieutenant in the illicit organization can produce [heroin that brings the big money] when he feels he has a market for it. Ray D'Ambrosio provided [appellant] with that market. And he took advantage of that market. That wasn't enough. They continued negotiations and there was talk of ten ounces; then, for a pound, . . .. But the defendant wasn't able to produce the maximum profit on that sale, because he couldn't negotiate the sale using his own money. He had to have the money from his ready market, Ray D'Ambrosio, so he brought him to the place where he made his connection. This connection, ladies and gentleman, was in Phoenix, Arizona.

Federal Rules of Evidence, but also is stated as one circumstance under which different crimes may be tried together under Rules 8(a) and 13 of the Federal Rules of Criminal Procedure, see note 32 supra. As already noted, Rules 8(a) and 13 are directed toward different ends—i. e., conserving judicial resources—from those served by Rule 14—i. e., separate trials of permissibly joined offenses in order to avoid prejudice. Nonetheless, because proof of a common scheme or plan serves the purposes of consolidation at the same time as it belies the differently focused need for severance, offenses joined under Rule 8(a) and 13 because they are parts of a common scheme have a greater chance of surviving a Rule 14 motion for severance than do offenses joined simply because they are "of the same or similar character." [37]

This analysis does not require that all offenses which are part of a common scheme always be tried together. When the defendant asserts under Rule 14 the possibility of "criminal propensity" prejudice, the court must undertake the probative-prejudice test of Rule 403 of the Federal Rules of Evidence. Moreover, there are sources of prejudice other than an inference of criminal propensity which may result from consolidation, see note 33 supra, which may require separate trials even if evidence of other crimes would be admissible under Rules 404(b) and 403.

### C.

There exists another basis upon which evidence of each of the crimes with which appellant was charged would have been admissible in a separate trial on the other crime. As explained in an earlier portion of this opinion, once the issue of entrapment was raised, the prosecution had to prove beyond a reasonable doubt that appellant was predisposed to commit offenses of the nature charged. Evidence of other crimes was therefore admissible under Rule 404(b) in order to prove appellant's predisposition, which became in effect an essential element of the crimes charged.

As is true of proving a common scheme or plan, proving predisposition in an entrapment case is not explicitly mentioned in Rule 404(b) as a permissible basis for introducing evidence of other crimes, but, again, it has always been so considered. See L. Lempert & S. Saltzburg, supra, at 220–21. This historic treatment of "other crimes" evidence as admissible to show predisposition coincides with Rule 404(b), under which evidence relevant for any purpose other than proving "character of a person in order to show that he acted in conformity therewith" is admissible. Thus, in an entrapment case, evidence of other crimes is presented not to show that the defendant actually "acted" in conformity therewith— that is, committed the crime—but that he was *disposed* to act in this manner.[38]

We have no doubt that appellant's September sale to Officer D'Ambrosio was probative of his predisposition to make the later sale, and that evidence of appellant's independent access to large quantities of heroin in November was probative of his predisposition to make the earlier sale. We therefore reject appellant's broad contention that evidence of a crime some two and one-half months *after* the crime for which a defendant is being tried is *per se* irrelevant to the issue of the defendant's predisposition to commit the earlier crime. "The question in each case is not whether the events sought to be introduced occurred before, during, or after commission of the alleged offense. The question is whether the events are relevant to and probative of defendant's willingness to commit the crime

---

**37.** The possibility of criminal propensity prejudice is greatest when a joint trial is ordered simply because the crimes charged are similar, see *Drew v. United States, supra,* 118 U.S.App. D.C. at 14–16, 331 F.2d at 88–90. This is why the ABA has recommended that the defendant have an absolute right to severance of offenses joined solely for this reason, while severance of related offenses would be within the discretion of the trial judge. See ABA Standards Relating to Joinder and Severance No. 2.2 (Approved Draft, 1968).

**38.** *See, e. g.,* the last paragraph of the standard "red book" instruction, note 2 supra.

charged when first solicited to do so by a government agent." *United States v. Brown,* 185 U.S.App.D.C. 252, 253, 567 F.2d 119, 120 (1977).

■ We are also convinced that when the probative weight of this "other crimes" evidence on the issue of predisposition is balanced against possible prejudice to the accused, as is required under Rule 403, the argument for admissibility is if anything strengthened. Admittedly, proving disposition to commit a crime is very close to proving "criminal propensity," the very type of prejudice against which the general prohibition on admission of evidence of other crimes is directed. In an entrapment case, however, the issue is precisely whether the accused, at the time of the government inducement, had a propensity to commit crimes of the nature charged—that is, whether he was predisposed to do so. After raising the defense of entrapment, the defendant cannot claim he is prejudiced by evidence indicating that at the relevant time he had a propensity to commit crimes such as those he is accused of committing. At most, the defendant may argue that given the chronological relationship of the act for which he was indicted and the "other crime," the latter has limited probativeness as to his mental state at the time of the former. Under the circumstances of this case, such an argument has no validity because the Government's evidence indicated that appellant's state of mind had not undergone transformation during the period between the two crimes.

Moreover, it is rare that the accused who claims entrapment also denies committing the crime.[39] Indeed, as did appellant in this case, he usually admits committing the crime, in order to preserve and strengthen his defense that he was induced to do so by the government. Thus, he is simply not in a position to be prejudiced should the jury infer from his commission of other crimes that he committed the crime charged.

Without probing further into what rules actually motivated the trial judge's consolidation order in this case, we are convinced that under the proper rules he most certainly would have reached the same result, and we accordingly are not disposed to upset the decision of the District Court on this basis. *See* Fed.R.Crim.P. 52(a).

For the foregoing reasons, we conclude that the entrapment instruction given at trial, and the consolidation of the separate indictments for trial, were proper, and therefore affirm.

*It is so ordered.*