Lawrence R. **KADIS** et al., Defendants, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 6753.

United States Court of Appeals First Circuit.

Heard Oct. 5, 1966.

Decided Feb. 27, 1967.

---

Henry Paul Monaghan, Boston, Mass., with whom John F. Zamparelli, Medford, Mass., was on brief, for appellants.

Thomas P. O'Connor, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Defendants, the Walnut Drug Corp. and two individual pharmacists, were convicted of violating 21 U.S.C. § 331(k) by refilling prescriptions for two drugs, librium and dexedrine, without obtaining authorization from the prescriber. They appeal on the ground that the two pharmacists were entrapped by agents of the Food and Drug Administration.

The facts are largely undisputed. In September 1964 the FDA office in Boston received a telephone call from a person who identified himself as Wilfred Chagnon, the treasurer of the Massachusetts Pharmacy Association. The caller said that the Walnut Drug Corp. was refilling librium and other drugs without authorization. Two agents were assigned to investigate. One obtained a medical prescription for librium, the other for dexedrine. Neither prescription referred to refills. Each agent went in plain clothes to the Walnut Pharmacy and had his prescription filled. Thereafter, over a period of about three months, the agents returned to the pharmacy a number of times and successfully asked for refills. The transactions are typically

reflected by the following testimony of one of the agents.

"[Kadis] came to the cash register in front of me, placed a prescription envelope on the counter in front of me. He said, 'Does the doctor want you to keep on taking these?' I said, 'I don't know.' He said, 'Of course you have been in to see him, and he probably said to continue.' I looked at him and said, 'I have not been back to see him since I got the prescription.' At that time I handed him a ten dollar bill.

"He said, 'You will be going back to see him pretty soon, won't you?'

"I said, 'I suppose I should' I replied, 'It is one of those things,' and he said 'We are supposed to keep track of how many tablets you take. It is just a technicality.'

"I nodded my head. He handed me my change."

The defendants' principal claim is that they were entrapped as a matter of law because the government agents had inadequate grounds to seek them out.

The doctrine of entrapment as developed by the courts is far from simple, and has led to a number of misunderstandings. Thirty-five years ago, in Sorrells v. United States, 1932, 287 U.S. 435, at p. 441, 53 S.Ct. 210, at p. 212, 77 L.Ed. 413, the Court said, "[T]he question whether it [entrapment] precludes prosecution or affords a ground of defense, and, if so, upon what theory, has given rise to conflicting opinions." Unhappily, this statement is no less true today. We believe that one reason for the confusion is that there may not be general agreement about "the true ends to be pursued." See Frankfurter, J., concurring, in Sherman v. United States, 1958, 356 U.S. 369, 379, 78 S.Ct. 819, 824, 2 L.Ed.2d 848. In *Sorrells,* supra,

287 U.S. at 442, 53 S.Ct. at 213, the Court said, "[Entrapment occurs] when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." See also Sherman v. United States, supra, 356 U.S. at 372, 78 S.Ct. 819. It can be argued that this definition suggests two different objectives: to prevent prosecution of persons who were innocent until corrupted by government agents, and to preclude certain police conduct whether te particular defendant was innocent or not.[1]

In the original *Sherman* appeal, United States v. Sherman, 2 Cir., 1952, 200 F.2d 880, Judge Learned Hand divided the issue of entrapment into two subsidiary questions: whether the police had induced the crime, and whether the defendant was predisposed, that is, whether the inducement had been directed towards an innocent man, or one already corrupt. The court placed the burden as to the first issue on the defendant, and the burden as to the second on the government. This separation has given rise to an increasing number of problems. We believe the time has come to review not only the problems, but the rationale underlying the division itself.

Although Judge Hand placed the burden of showing inducement upon the defendant, he did not define the quantum of burden.[2] Subsequently, in United States v. Pugliese, 1965, 2 Cir., 346 F.2d 861, the court reversed a conviction as plain error because the district court had failed to make clear to the jury that this burden was only to prove inducement by a fair preponderance, and not beyond a reasonable doubt. In Gorin v. United States, 1 Cir., 1963, 313 F.2d 641, cert.

---

1. In both *Sorrells* and *Sherman* concurring minorities contended that the sole proper purpose of the doctrine of entrapment was to prevent certain police activities. In both cases the Court rejected this view.

2. Also, he did not fully define inducement. Since then the Second Circuit has de-

scribed it as any solicitation or initiation. United States v. Riley, 1966, 363 F.2d 955; United States v. Jones, 1966, 360 F.2d 92, 96; United States v. Pugliese, 1965, 346 F.2d 861, 863. We find no contrary decisions anywhere.

den. 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed. 2d 1052, we, too, held that the defendant's evidence must merely preponderate. Later, however, since it was clear that the government must show the predisposition of the defendant beyond a reasonable doubt, and since we were troubled by the potential confusion introduced by requiring the jury to be instructed on two different burdens, we held that there is no burden of proof on the defendant even as to inducement. Sagansky v. United States, 1 Cir., 1966, 358 F.2d 195, cert. den. 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55. All that we there required was that there be some evidence indicating that the defendant was induced.

■ Consideration of inducement as a separate issue has encouraged the previously mentioned thought, that one of the "ends" to be achieved by the doctrine of entrapment is to police the police, to prevent certain antisocial police conduct —no matter how corrupt the defendant may, in fact, have been. There are really two claims. The first, which is advanced in the case at bar in its most extreme form, is that no inducement of any kind is justified unless the police had prior grounds warranting the initiation of their activity.[3] We rejected this contention in Whiting v. United States, 1 Cir., 1963, 321 F.2d 72, cert. den. 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114. So have a number of other circuits. Kivette v. United States, 5 Cir., 1956, 230 F.2d 749, 754, cert. den. 355 U.S. 935, 78 S.Ct. 419, 2 L.Ed.2d 418; Silva v. United States, 9 Cir., 1954, 212 F.2d 422, 424; United States v. Abdallah, 2 Cir., 1945, 149 F.2d 219, 222 n. 1, cert. den. 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429; Hadley v. United States, 8 Cir., 1927, 18 F.2d 507, 508; Newman v. United States, 4 Cir., 1924, 299 F. 128, 129. We adhere to that view.

■ At the other end of thé spectrum, it is argued that extreme forms of inducement are socially offensive, and should defeat any prosecution based thereon. See United States v. Morrison, 2 Cir., 1965, 348 F.2d 1003, cert. den. 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158. We see no purpose in debating the wisdom of such a principle, for there is a more ready answer. Extreme police tactics, for example, of badgering, or making massive appeals to the sympathy of an obviously reluctant person, will mean that as a matter of law the government cannot be found to have sustained its burden of proving that it did not corrupt an innocent or unwilling man. See Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, infra. No situation suggests itself in which such police behavior, if conceded or found, would not necessarily create a reasonable doubt that the defendant was ready and willing to commit the crime when he was approached. Since an acquittal would thereby be required, we see no reason for making ethical appraisals of the police behavior.

■■ We find, in sum, that consideration of inducement as a separate issue serves no useful purpose, and we believe it to be a mistake.[4] We will no longer

3. The present defendants go so far as to contend that the grounds must amount to probable cause similar to that which would justify an arrest. Their position is that the telephone caller was not, in fact, Chagnon, and that the police, accordingly, did not have a "reliable informer."

4. With due respect, we suggest that the Second Circuit has already partially recognized this mistake sub silentio. In United States v. Riley, 2 Cir., 1966, 363 F.2d 955, the court concluded that even though proof of inducement puts the burden on the government to prove predisposition, a defendant should not be entitled to go to the jury on entrapment unless there is some evidence of hesitation on his part. The court described our contrary decision in Sagansky, supra, as "logical," but said it preferred a more "middle of the road" position. Yet we know of no other criminal case where the government was not required to go to the jury on an issue on which it had the burden of proof. A defendant's silence cannot satisfy that burden. Cf. United Brotherhood of Carpenters v. United States, 1947, 330 U.S. 395, 67 S.Ct. 775,

bifurcate entrapment into sub-issues of inducement and predisposition, but will broaden the departure initiated in *Sagansky*. Henceforth we will look, singly, at the ultimate question of entrapment. If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness. See United States v. Riley, supra, n. 4.

While this conclusion modifies our prior decisions, we do not feel it to be at variance with the position thus far taken by the Supreme Court, which has never distinguished between the issues of inducement and predisposition, nor condemned the act of inducement apart from its effect on an innocent man.[5] In Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, very forceful, what might well be described as offensive, inducement resulted in a directed acquittal not by virtue of singling out the acts of inducement for criticism, but because the Court held that in the face of such massive inducement the government could not sustain the burden of proving that the defendant had not been corrupted. More recently, in Osborn v. United States, 1966, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394, in a situation in which inducement, as such, could have raised interesting questions, the Court made no mention of it. There a government agent who managed to gain employment with an attorney defending a criminal case remarked that one of the prospective jurors was his cousin. The attorney "jumped up" and said, "Let's go outside and talk about it," and immediately suggested the possibility of offering a bribe. It is difficult to say that the agent's remark did not induce the offense in the broad sense of the word. The Court's sole observation, however, was, "At the most, Vick's statement afforded the petitioner 'opportunities or facilities' for the commission of a criminal offense, and that is a far cry from entrapment."

■■ One question remains: when has the defendant shown "some evidence" of entrapment, viz., when is the burden placed upon the government to show that the defendant was not in fact corrupted by the government agent. The amount need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal, cf. McDonald v. United States, 1962, 114 U.S.App.D.C. 120, 312 F.2d 847, 849, but it must be more than a mere scintilla. Ibid. It cannot be enough, for example, where the defendant readily agreed to engage in a criminal act, to show that he enjoys a good reputation. However, any evidence, whether introduced by the defense or by the prosecution, that the government agents went beyond a simple request and pleaded or argued with the defendant, should be enough. Evidence that the defendant resisted the criminal suggestion raises the question whether his hesitation exhibited the conscience of the upright, or merely the circumspection of the criminal. Evidence that on other occasions the defendant refused to engage in acts similar to those with which he is charged tends to prove that he was not ready and willing, and equally creates a jury issue. On the other hand, evidence, as in the case at bar, of unwillingness to commit much

---

91 L.Ed. 973; DeCecco v. United States, 1 Cir., 1964, 338 F.2d 797. If a showing of inducement is what places the burden of proof on the government, we think *Sagansky* was not only logical, but inevitable.

5. It is true there was mention in Lopez v. United States, 1963, 373 U.S. 427, at 435, 83 S.Ct. 1381, at 1386, 10 L.Ed.2d 462, of "conduct by government agents which may well have induced the accused to commit the crime charged." This, however, was a general remark not directed in any way at separating out inducement as an independent issue. It is, of course, true that a finding of entrapment necessarily involves a finding that a government agent induced the offense. If there was no solicitation, there can be no entrapment. This, however, does not make inducement a separate issue in the sense that some lower courts have hitherto treated it.

more serious or otherwise noncomparable crimes, would seem insufficient.

Whether in the present case there was enough evidence, we need not determine. The court in fact submitted the question to the jury with clear and accurate instructions, and fully explained the burden that was upon the government. Defendants have shown no prejudicial error.

Affirmed.