**UNITED STATES of America,
Appellee,**

v.

**Mark HOPKINSON et al., Defendants,
Appellants.**

**No. 73–1301.**

United States Court of Appeals,
First Circuit.

Argued Jan. 9, 1974.

Decided March 4, 1974.

Albert H. Russell, Jr., with whom Alfred Paul Farese, Everett, Mass., was on brief, for appellants.

James J. McLaughlin, Atty., Crim. Div., Dept. of Justice, with whom William J. Deachman, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Hopkinson, Mancini and DePietro were indicted for possession of 286,984 grams of marijuana with intent to distribute, illegal importation, and conspiracy to import.[1] Following a jury trial, Hopkinson and Mancini were found guilty of possession with intent to distribute and conspiracy to import, but the jury was unable to reach a verdict on the importation count against them. The court granted DePietro's motions for acquittal of conspiracy and importation, and the jury found him guilty only of simple possession, 21 U.S.C. § 844(a),

[1]. In violation of 21 U.S.C. §§ 841(a)(1), 952(a), 963.

rather than possession with intent to distribute.

A government agent testified that he had observed Heffernan, an unindicted co-conspirator, leave from a Texas airport in a small empty aircraft and return several hours later with 18 Spanish-marked boxes of marijuana. After he was arrested, Heffernan agreed to complete his delivery exactly as previously arranged—only under the control of government agents—and he flew to New Hampshire where he was met by the three defendants. Heffernan was a principal witness for the government at the trial.

Appellants contest several evidentiary rulings and the court's failure either to grant their motions for acquittal based on entrapment or to give their requested jury instructions on entrapment.

■■ The first three asserted errors concern the admission of testimony revealing that Hopkinson and Mancini had engaged earlier in other criminal activity, namely armed robbery and illegal importation and distribution of marijuana.[2] But the prior incidents were part of a continuing scheme to establish a large scale marijuana distributorship. There was testimony that "[t]he purpose of getting the [robbery] money was . . . to set up a distributorship for marijuana in the United States." Following the robbery, Hopkinson and Mancini imported 225 pounds of marijuana from Mexico; Heffernan testified Hopkinson,

"wanted to know what price we could get for the marijuana in Boston, how soon we could get rid of it, because he had to pay his suppliers back in Mexico, and how soon we could expect to get enough money for the flight down to Mexico for the downpayment and cost of the aircraft."

When the first marijuana lot was being sold, Hopkinson and Heffernan discussed details of the importation conspiracy

charged in the indictment. Mancini, who had received large payments for deliveries from the 225 pound lot, provided Heffernan with funds to pay the downpayment on the aircraft and to finance the Mexican venture. Evidence of prior criminal activity "is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object . . ." Green v. United States, 176 F.2d 541, 543 (1st Cir. 1949). Here the prior history fleshed out the circumstances of the later conspiracy. The earlier marijuana importation and subsequent sale were, moreover, admissible as prior similar acts to prove intent to distribute. New England Enterprises, Inc. v. United States, 400 F.2d 58, 70 (1st Cir. 1968).

■ Also objected to was Heffernan's testimony that Hopkinson asked him if he would be willing to fly marijuana from Mexico into the United States and "that it would be minimal risk, because he [Hopkinson] had done this in the past, and he had a very good contact in Mexico and I would be very safe." While the reference to prior importations was, by itself, irrelevant, the statement as a whole was relevant to the conspiracy to import, one aspect of which was Hopkinson's attempt to induce Heffernan to act as pilot. Cf. United States v. Johnson, 467 F.2d 804, 807 (1st Cir. 1972); United States v. Ravich, 421 F.2d 1196, 1204 (2d Cir. 1970). Had Hopkinson objected we would be faced with deciding whether the statement's legitimate probative value was outweighed by the possibility of prejudice. But Hopkinson did not object, nor did he ask for a limiting instruction. We cannot say that the court committed plain error nor see that the statement could have materially prejudiced Mancini who was not present during the conversation.

---

2. The court repeatedly cautioned the jury that the testimony was not evidence against De-Pietro.

■ Appellants claim error in the admission into evidence of copies, not originals of two rental contracts for a truck and aircraft. However, in the case of the Hertz truck rental agreement, it is now too late to raise the best evidence rule. At trial defendants first objected without stating a reason. Later a reason was given to the effect that the signature on the form could only indicate a name but not identify the defendant, DePietro. That a copy, not an original, had been tendered was never mentioned. Failure at the trial to cite the best evidence rule deprived the government of an opportunity to take corrective measures. *Cf.* Taylor v. Baltimore & O. R. R., 344 F.2d 281, 287–288 (2d Cir. 1965). There had, moreover, been no objection to the government's eliciting information from a Hertz employee concerning what the form showed about the type of vehicle rented, the location of the Hertz rental agency, and the date of the rental. Admission of the form as an exhibit added little to what the jury had already learned.

Appellants did register a timely best evidence objection to the introduction of the aircraft rental agreement. The objection was overruled without any preliminary finding that a reasonable search had been made for the original or that the original was unavailable through no fault of the proponent. *See* Sylvania Electric Products, Inc. v. Flanagan, 352 F.2d 1005, 1008 (1st Cir. 1965).

■ However, when the rental agreement was introduced, Heffernan testified that it was his receipt for the contract he had executed in renting the aircraft. Although this circuit has not had occasion to express its view, and the rule varies among jurisdictions, there is strong authority elsewhere for admitting such a document as a duplicate original. *See* 4 Wigmore, Evidence § 1233 (Chad-

bourn rev. 1972); McCormick, Handbook of the Law of Evidence § 235 (2d ed. 1972).[3] But we need not decide, since, even if it were not admissible, the error would be harmless. Heffernan had already testified, without objection, that the type of aircraft he needed was a Cherokee 6, that Lease-A-Plane had this type of aircraft, and that he had picked up an aircraft from that firm on August 8.

■ Appellants contend that the court erred in permitting a customs agent who was a "marijuana expert" to testify to the "street value" in Boston of a pound of marijuana An opinion of value derived solely from reports from undercover agents and law enforcement agencies is inadmissible hearsay. *See* 3 Wigmore, Evidence § 719(2) (Chadbourn rev. 1970). However, since Heffernan had twice testified to the same per pound selling price, as well as to the net profit defendants planned to make on the sale, admission of the agent's corroborative testimony was harmless.

■ Appellants argue finally that the government's conduct in accompanying Heffernan, and paying for his travel expenses, was "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Where the government merely encouraged Heffernan to proceed as planned, the contention is frivolous. The government did not supply Heffernan with the contraband or the cash for his purchase or the means for its delivery; nor did it in any conceivable fashion coerce defendants into accepting delivery. The government's activity did not raise a jury issue of entrapment; there was no evidence that the defendants were other-

---

3. It can also be argued that the best evidence rule is not in point. The leasing or renting of property may be shown by secondary evidence such as oral testimony. If the present exhibit was secondary evidence, it might still be adequate to prove that a lease was executed between particular parties on a particular date. See 4 Wigmore, Evidence § 1242 et seq. (Chadbourn rev. 1972); McCormick, Handbook of the Law of Evidence § 233 (2d ed. 1972).

wise unwilling. *Cf.* Kadis v. United States, 373 F.2d 370 (1st Cir. 1967). Furthermore, the requested jury instructions misstated the law.

Affirmed.