Nicholas TZIMOPOULOS, Defendant,
Appellant,

v.

UNITED STATES of America, Appellee.

No. 77–1032.

United States Court of Appeals,
First Circuit.

Argued April 6, 1977.

Decided May 20, 1977.

Melvin S. Louison, Taunton, Mass., for appellant.

Paul F. Healy, Jr., Asst. U. S. Atty., Washington, D. C., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MILLER,* Judge.

PER CURIAM.

Appellant challenges on several grounds his conviction by a jury on a one-count indictment charging that he offered a bribe to a public official in violation of 18 U.S.C. § 201. We affirm.

Appellant argues that his criminal conduct was "the product of the creative activity of government agents thereby establishing entrapment as a matter of law," and that, in any case, the trial judge erred in refusing to give a requested instruction on entrapment. We find no merit in either

* Hon. Jack R. Miller of the United States Court of Customs and Patent Appeals, sitting by designation.

point.[1] Entrapment as a matter of law may be established by *undisputed* facts that the criminal design originated with the government agent, who planted in the mind of an innocent person the idea of committing the offense, and that the innocent person committed the offense at the urging of the government agent. *Sherman v. United States,* 356 U.S. 369, 372–73, 78 S.Ct. 819, 821, 2 L.Ed.2d 848, 851 (1958); *United States v. Jackson,* 539 F.2d 1087, 1090 (6th Cir. 1976). Here the fact of the "planting" is very much in dispute, with the government agent (John R. Holliday, Criminal Investigator, United States Immigration and Naturalization Service (INS)) testifying that appellant first brought up the idea of a bribe by saying "perhaps we could handle it here today outside of the office for cash" and appellant testifying:

Mr. Holliday is the one who came up to me and suggested this. I did not go up to him and suggest it.

With respect to any "urging" on the part of the government agent, appellant testified that "Holliday forced me into doing this kind of thing," and argues that "This is the only piece of evidence on point" and that it is sufficient. However, such a statement is conclusory, and, as pointed out by appellee, use of the word "forced" is self-serving. Moreover, the real "evidence on point" is shown by the record of cross-examination of appellant, as follows:

Q After he [Holliday] suggested it you freely went along with it?

A Yes, because you see I am not infallible. I trusted his valued judgment, his valued judgment to make this and Tsironis' valued judgment.[2]

With respect to the argument that the entrapment issue should, at least, have been presented to the jury in the court's charge, we find no error in the court's refusal to do so. Appellant contends that he met the burden of establishing a defense of entrapment prescribed by this court in *Kadis v. United States,* 373 F.2d 370, 374 (1st Cir. 1967), quoting therefrom as follows:

Henceforth we will look, singly, at the ultimate question of entrapment. If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness.

However, appellant's conclusory statement, noted above, does not satisfy the requirement of "some evidence tending to show unreadiness." *United States v. Hopkinson,* 492 F.2d 1041, 1044 (1st Cir.), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974); *United States v. Foster,* 469 F.2d 1, 3 (1st Cir. 1972).

■ Appellant also argues that Litsa Garbidou was held in the INS office and not permitted to see him and Tsironis because Holliday "did not want anyone to give Litsa advice, and he did not want her to have any friendly contact." Therefore, appellant says that "[b]ut for" such conduct of Investigator Holliday and other INS officials, "this case would never have happened." Assuming that Litsa Garbidou's rights were violated,[3] it is for her to com-

---

1. Accordingly, it is unnecessary to reach appellant's argument that he had admitted wrongdoing and, therefore, had a right to raise a defense of entrapment; or alternatively, that the court should permit him to both deny wrongdoing and claim entrapment, thus reversing the rule in this circuit announced in *Sylvia v. United States,* 312 F.2d 145 (1st Cir.), *cert. denied,* 374 U.S. 809, 83 S.Ct. 1694, 10 L.Ed.2d 1032 (1963), and more recently recognized in *United States v. Russo,* 540 F.2d 1152 (1st Cir.), *cert.*

*denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976).

2. Tsironis was with appellant during the conversations between Investigator Holliday and appellant. Appellant's father had given Tsironis $1,500 to provide bail for a Litsa Garbidou, who had been arrested for being an alien illegally in the United States.

3. Appellant says that his conviction "makes a farce of the law" in *Escobedo v. Illinois,* 378 U.S. 484, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964),

plain—not for appellant. *Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113, 119 (1976). Appellant maintains, however, that since her rights were violated "for the sole purpose of ensnaring appellant," there should be an exception to the rule that only the person whose rights have been violated can complain. Considering the evidence in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), it is clear that the conduct of Investigator Holliday and other INS officials towards Litsa Garbidou was not motivated by a purpose of entrapping appellant; rather, that the purpose was to avoid her having a conversation with appellant and Tsironis in the Greek language before getting her to the INS office, where she had agreed to make a statement, and to avoid a confrontation between her and Tsironis, who had been implicated in her alleged illegal activity. As to appellant's "[b]ut for" point, it clearly amounts to mere speculation.

Appellant further argues that the trial judge "went beyond permissible limits" in commenting on the evidence as follows:

> In my opinion, which I say you are free to disregard if you wish, the testimony about the treatment of the girl and whether as was claimed Holliday acted heartlessly, that was not the word but callously, and so forth, these things are of some background relevancy, but in my view marginal, a very slight relevancy.

It is appellant's position that the acts should have been described as "constitutional violations," rather than minimized as merely "callous" or "heartless." However, as noted previously, any violation of Litsa Garbidou's rights was not a proper issue in appellant's trial, and, in light of the record, it would have been presumptuous on the part of the trial judge to label the conduct of Investigator Holliday and other INS officials towards her as "unconstitutional." Moreover, the trial judge specifically instructed the jury:

In deciding whether or not the Government has proved beyond a reasonable doubt that the defendant acted with prescribed criminal intent, evidence of Holliday's conduct may properly be considered and such things as whether Holliday coerced or induced the defendant to pay the thousand dollars is relevant on that issue, of intent.

Also, the above portion of the instruction objected to by appellant was preceded by the following:

> There was a good deal of testimony of marginal relevance presented in the course of this trial. In my opinion—I am entitled to express my opinion to you or [sic, on] matters of evidence provided you understand you can disregard my opinion and you are the sole judges of the facts. The Court is permitted to express opinions on evidence and certainly I am not going to express my opinion on the matter of the credibility of the evidence. That is strictly up to you in your decision.

Considering the instructions as a whole, we find no errors in the trial judge's comments on the evidence.

Finally, appellant argues that, in imposing a sentence in excess of what was recommended by the Government, the trial judge relied on information that was incorrect, citing the following statement:

> Now, here the Court cannot ignore the evidence that came in in the form of a tape recording and the principal sales talk. My interpretation of that recording was that Mr. Tzimopoulos was trying to corrupt the agent on the basis that *he* had already succeeded in corrupting another agent. So, I cannot look at this case *as if it were a matter of someone helping a friend.* [Emphasis supplied.]

Appellant interprets the "he" to refer to himself and states that the record in no way shows *that he was ever involved in such a matter on a previous occasion.* However, the "principal sales talk" used by appellant

---

and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, if those cases are applicable, they are applicable to Lit-

sa Garbidou—not to appellant. Moreover, the record shows that she was warned of her rights on two occasions after her arrest.

in his conversation with Investigator Holliday was, according to Holliday, that "We have taken care of cases like this before with him [another INS investigator]." In a colloquy with the trial judge, appellant's counsel admitted that appellant knew about a previous case involving Tsironis and the other INS investigator.[4] The trial judge then remarked: "He [appellant] was using it as a selling point." Accordingly, we are satisfied that the trial judge did not rely on incorrect information. The sentence imposed was clearly within the statutory limits, and there is no evidence of an abuse of discretion in its imposition.

In view of the foregoing, the conviction is *affirmed*.

---

**4.** The record shows that Tsironis told appellant that he had paid another INS investigator money under the same circumstances and that this was told to Holliday by appellant.