UNITED STATES of America, Appellee,

v.

**Frank IMBRUGLIA,
Defendant-Appellant.**

No. 79–1104.

United States Court of Appeals,
First Circuit.

Argued Sept. 7, 1979.

Decided March 7, 1980.

Richard L. Dahlen, Boston, Mass., by appointment of the Court, with whom Chaplin, Casner & Edwards, Boston, Mass., was on brief, for defendant-appellant.

Stanley E. Greenidge, Sp. Atty., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty. and Jeremiah T. O'Sullivan, Special Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, KUNZIG, Judge,* U. S. Court of Claims, BOWNES, Circuit Judge.

KUNZIG, Judge.

Appellant, convicted of conspiracy to receive, conceal, and sell stolen securities, 18 U.S.C. § 371, and of the substantive offense, 18 U.S.C. § 2315, seeks reversal of the district court's denial of his motion for a new trial on the basis of newly discovered evidence. The question, in accordance with the Supreme Court's decision in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976),[1] is whether this new-

---

* Sitting by designation.

1. Agurs had been convicted of second-degree murder and based her appeal on the prosecu-

ly discovered evidence creates a reasonable doubt that would not otherwise exist about appellant's conviction. Having examined the new evidence in the context of the entire record, we affirm the district court's decision.

From August through October, 1973, in Boston, Massachusetts, Special Agent Frank Searle of the United States Secret Service, using the name "Frank Setti," worked in an undercover capacity in connection with an investigation into the receipt and disposition of stolen United States Treasury securities. On August 29, 1973, during a telephone conversation, Guy "Sonny" Sylvester (also referred to as "Silvestro") a government informant and close acquaintance of appellant Imbruglia, advised Special Agent H. Terence Samway, United States Secret Service, that appellant had offered to sell him $5,000 worth of stolen United States Savings Bonds.

Later that day, Sylvester introduced Agent Searle to Imbruglia who offered to sell Searle a $5,000 "package" of stolen bonds and further stated he could obtain a much larger amount of stolen Series "E" bonds. After some discussion, Imbruglia accepted partial payment and directed Searle to a newspaper containing numerous Series "E" bonds which was hidden inside Sylvester's truck.

On August 30, 1973, Imbruglia introduced his "partner," co-defendant Donati, to Searle, and said he was trying to obtain several large "packages" of bonds from New York. A few days later Searle accepted another package of bonds on a consignment basis.

On September 30, 1973, Agent Searle called Donati telling him he knew a senior loan officer at the First National Bank who could handle large amounts of stolen securities. Shortly thereafter Searle introduced Imbruglia and Donati to this supposed corrupt bank official, in reality government Agent Collins. On October 16, Donati told Searle that the "stuff" had arrived from New York. Searle and Collins then met with Imbruglia in a hotel cocktail lounge where they were introduced to co-defendant Schocker. In the course of conversation the agents were shown a $100,000 U.S. Treasury Note which came from a bag carried by Schocker, who said he had five more similar notes, totalling $515,000. Imbruglia gave Searle a bag said to hold about $35,000 in Series "E" U.S. Savings Bonds.

On the morning of October 17, in a Boston hotel, Schocker introduced Searle to one Schreter who said that he and his "partner" had driven from New York with "this package." Later that morning, at about 11:30 a.m., Searle met with Imbruglia, Donati, and Schreter at the hotel. Searle told them the securities had to be delivered to the First National Bank, and, in three separate cars, they departed for the bank. After delivery of the securities to the bank was accomplished, Imbruglia, along with other co-defendants, was apprehended there by awaiting agents of the Secret Service Field Office.

In his defense at trial, Imbruglia asserted an entrapment theory, and contended he had been importuned to join in the conspiracy at the instance of the government's informant (his friend) Sylvester. Imbruglia himself did not take the stand but his wife testified that in July through September 1973, informant Sylvester stopped by appellant's house on numerous occasions, saying one time, "I have a deal going and we can make some money." During this time co-defendant Donati also visited the Imbruglia home and made frequent phone calls to appellant.

Accordingly, at trial, Imbruglia filed a requested instruction on the issue of entrapment. The district judge ruled that the evidence was insufficient to raise the issue of entrapment and ordered counsel not to argue that issue to the jury. On December 31, 1975, Imbruglia and others were found guilty of violating 18 U.S.C. §§ 371, 2315.

tor's failure to provide her counsel the victim's criminal record, thereby impairing her self-defense theory. In affirming Agurs' conviction the Supreme Court set forth standards governing new trial motions in cases of prosecutorial nondisclosure.

Imbruglia first appealed the verdict primarily on the ground that he ought to have been allowed to present the entrapment defense to the jury. The district court's judgment of conviction was affirmed by this court, *United States v. Imbruglia*, 564 F.2d 87 (1st Cir. 1977) (No. 76–1152, without published opinion) and a petition for rehearing was denied on January 13, 1978. Imbruglia's petition to the United States Supreme Court for a writ of certiorari was denied on October 2, 1978, *cert. denied*, 439 U.S. 842, 99 S.Ct. 134, 58 L.Ed.2d 141 (1978).

On January 19, 1979, appellant filed a motion for new trial on the basis of newly discovered evidence pursuant to Rule 33, Fed.R.Crim.P.[2] On January 24, 1979, the district judge filed his written ruling denying the motion for new trial. Having presided at Imbruglia's trial, the district judge concluded the newly discovered evidence did not justify the granting of a new trial. This appeal followed.

The newly discovered evidence presented by appellant is a report, obtained by appellant under the Freedom of Information Act, of the Federal Bureau of Investigation dated November 28, 1973, prepared by Special Agent John Connolly, Jr., (hereinafter "Connolly report"). For the most part, the report contains information provided by an unidentified person about activities of appellant, Donati, Sylvester (referred to as "Silvestro") and others during May through August 1973. The report was provided to Gerald F. McDowell, a United States Strike Force Attorney in Boston. Strike Force attorneys prosecuted Imbruglia who contends the prosecution should have provided the Connolly report to him as exculpatory material when it became known he was to rely upon an entrapment defense at trial.

The key portion of the report, appellant argues, is an excerpt stating that on August 5, 1973, Frank Setti (actually Agent Searle) was observed meeting with Donati, Imbruglia, Sylvester (Silvestro) and another unidentified male.[3] Appellant insists the revelation of this meeting is significant because at trial, Agent Searle, the government's main witness, testified he was not introduced to Imbruglia until August 29, 1973. The report conflicts with Searle's testimony by indicating Searle met with Imbruglia nearly one month before Searle testified he was introduced to him. This new information, appellant contends, is important for two reasons. First, it bears upon his entrapment defense insofar as it reveals another occasion when Imbruglia met not only with Sylvester, who had previously solicited his participation in criminal schemes, but with Agent Searle, the undercover agent to whom Imbruglia sold stolen securities on August 29, 1973. The evidence, according to appellant, supports his contention that he was importuned to join the conspiracy; had this fact been known at trial, he argues, it might well have been sufficient to put the entrapment issue to the jury. Second, the

2. Appellant at this time also moved for a reduction of sentence, which was denied, and for appointment of counsel, which was granted. Those matters are not before us on this appeal.

3. The excerpt of the Connolly report upon which appellant relies reads:

"On August 5, 1973 [deletion by the government] advised that on that date, at 10:20 A.M., he observed BOBBY DONATI, FRANK IMBRUGLIA, and an unknown male sitting in a 1952 black Chevrolet, Massachusetts license 843 373.

"At 2:25 P.M., on the same date, he advised that he saw IMBRUGLIA, DONATI, and the unknown male, which he had observed at 10:20 A.M., in the company of a white male driving a 1973 green Dodge Dart, Massachusetts registration 252 457.

"[Deletion by government] advised that a Registry check revealed that the Dart was registered to a John J. Johnson

.    .    .    .

"At 2:25 P.M. all of the above individuals were joined by two other individuals, who [deletion by government] determined to be GUY J. SILVESTRO, Date of Birth (DOB) January 1, 1936, height 5'10", weight 220 pounds, address 33 Jefferson Road, Wakefield, Massachusetts; and FRANK SETTI, DOB September 29, 1942, address 287 Center Street, Jamaica Plain, Massachusetts, Apartment 60.

"[Deletion by government] advised that the secretive manner in which these people were meeting caused him to become suspicious of their activities. He said that when they finally broke up, IMBRUGLIA yelled to JOHNSON, 'I'll call you tonight.' .    .    ."

fact of this earlier meeting indicates, at least, that Searle's recollection as to when he first met Imbruglia was inaccurate. The new fact opens a fresh chance to attack Searle's credibility; since Searle was the prosecution's main witness, appellant emphasizes, any fact detracting from his credibility is especially important. Citing *United States v. Butler*, 567 F.2d 885 (9th Cir. 1976) and *United States v. Miller*, 411 F.2d 825 (2d Cir. 1969), appellant maintains that formerly undisclosed evidence impugning the credibility of an important prosecution witness is sufficient to create a reasonable doubt as to the verdict's validity and calls for a new trial.

In opposition to Imbruglia's appeal the government, after reviewing the standards set forth in the Supreme Court's *Agurs* decision, asserts that the new evidence bears no relevance to Imbruglia's defense that he was entrapped by Sylvester and is therefore immaterial and falls far short of meeting the reasonable doubt standard necessary for a new trial. Moreover, the new evidence is merely cumulative of other evidence in the record and of an impeaching character; as such, the evidence cannot be grounds for a new trial.

■ Before proceeding further it is essential to clarify the standard under which appellant's Rule 33 motion for a new trial is to be judged. In this case it is acknowledged that during appellant's trial the Connolly report, which appellant now presents as newly discovered evidence, was available to the prosecution. For this reason we are not faced with the general situation where new evidence is discovered from a neutral source after trial and the usual standards for a new trial under Fed.R.Crim.P. 33 apply. *See United States v. Street*, 570 F.2d 1 (1st Cir. 1977). Rather, as stated in *Agurs*, 427 U.S. at 111, 96 S.Ct. at 2401:

[T]he fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.[4]

Because this case pertains to a question of prosecutorial nondisclosure, the issue is whether the omitted evidence is of sufficient materiality to call for a new trial. *Brady v. Maryland*,[5] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Agurs, supra*. In *Agurs* the Court described three different situations of prosecutorial nondisclosure and framed a different standard for determining materiality in each situation. The first is an instance involving "a corruption of the truth-seeking function of the trial process" 427 U.S. at 104, 96 S.Ct. at 2397, by prosecutorial misconduct as when the prosecution's case includes perjured testimony and the prosecution knew, or should have known, of the perjury. Recognizing that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, the Court stated such a verdict must be set aside if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* This was described as a "strict standard of materiality."

The second situation arises when the defendant has made a specific request for information and the prosecution has failed or refused to respond to the request, as occurred in *Brady*. Non-response by the prosecutor in such a case, the Court found, "is seldom, if ever, excusable." 427 U.S. at 106, 96 S.Ct. at 2398. Evidence will be

---

4. The distinction between the usual standards applicable to motions for new trial under Fed. R.Crim.P. 33 and cases of prosecutorial nondisclosure, as here, has been noted in other cases following *Agurs*. *See United States v. Librach*, 602 F.2d 165 (8th Cir. 1979); *United States v. Hedgeman*, 564 F.2d 763, 768 (7th Cir.), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1977).

5. The Court held in *Brady* "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197.

deemed material if "the suppressed evidence might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2398.

■ Third, when no request is made by defendant or only a general request is made,[6] information not revealed by the prosecutor will be held to be material only if "the omitted evidence creates a reasonable doubt that did not otherwise exist." 427 U.S. at 112, 96 S.Ct. at 2402. The Court stressed that the "omission must be evaluated in the context of the entire record."[7]

In this case we are confronted with the third category of nondisclosure. The Connolly report was available to prosecution attorneys during Imbruglia's trial and was not made available to him. Though Searle's testimony at trial as to when he was introduced to Imbruglia conflicts with the August 5 date noted in the Connolly report, there is no suggestion nor any indication whatsoever that Searle's testimony was the product of perjury;[8] in other words, such prosecutorial misconduct as would activate the "strict standard" of materiality is in no way indicated. Appellant acknowledges he made no specific request (nor for that matter, a general request) for the material now offered as newly discovered evidence. Therefore, the governing standard of materiality is whether the omitted evidence creates a reasonable doubt about the validity of appellant's verdict that did not otherwise exist.[9]

Having set forth the applicable standard of materiality we now examine, in the context of the entire record, the newly discovered evidence submitted by appellant. Appellant argues that the Connolly report, which contradicts Searle's testimony that he was "introduced" to appellant on August 29, 1973, is material with respect to two issues: (1) the validity of appellant's entrapment defense; (2) the credibility of Searle, the prosecution's main witness. We shall address these issues individually.

■ "Entrapment occurs when the offense for which a defendant is being prosecuted was instigated by law-enforcement officers and the defendant had no previous

---

**6.** The Court concluded there is no significant difference between cases in which there has been merely a general request for exculpatory matter (i. e., the defendant asks for "anything exculpatory" or "all *Brady* material") because such a request "really gives the prosecutor no better notice than if no request is made." 427 U.S. at 106, 96 S.Ct. at 2399.

**7.** The relevant passage from the Supreme Court's *Agurs* opinion is as follows:
"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. at 112–13, 96 S.Ct. at 2401 (Footnotes omitted.)

**8.** During oral argument of this appeal the government asserted that it is the Connolly

report which is wrong as to the August 5, 1973, date, that the date of the August 5 meeting was actually *September* 5; Searle's testimony that he was introduced to Imbruglia on August 29, 1973, it was claimed, is correct.

**9.** In briefs submitted for this appeal the parties evidently agreed that to the extent *Agurs* supplies the relevant guidelines, this standard, of the three *Agurs* describes, applies in this case.

The meaning of the standard, whether the omitted evidence creates a "reasonable doubt" may in part be determined by comparison to other standards. For example, in *United States v. DiCarlo*, 575 F.2d 952 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978) we equated the standard of materiality applicable to the second *Agurs* situation of prosecutorial nondisclosure (failure to respond to a specific request of defendant, material evidence is evidence that might have affected the outcome of the trial) with the "usual rule of demonstrably harmless error." 575 F.2d at 959 n. 5. The test in a general or no request situation, as here, is not one of harmless error but is not so severe as to require the defendant who discovers the undisclosed evidence after trial to demonstrate that it "probably would have resulted in acquittal." *Agurs*, 427 U.S. at 111, 96 S.Ct. at 2401.

disposition to commit it." *United States v. Caron*, 588 F.2d 851 n. 3 (1st Cir. 1978). Before the issue of entrapment becomes one for jury determination, however, the defendant must first present "some evidence tending to show unreadiness." *Kadis v. United States*, 373 F.2d 370, 374 (1st Cir. 1967); *Tzimopoulos v. United States*, 554 F.2d 1216, 1217 (1st Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977); *United States v. Hopkinson*, 492 F.2d 1041, 1044 (1st Cir.), *cert. denied*, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974). " 'Some evidence' . . . need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal, . . . but it must be more than a mere scintilla." *Kadis, supra*, at 374.

██ At trial, appellant attempted to demonstrate his unreadiness or inducement[10] by submitting evidence through the testimony of his wife purporting to show that Sylvester, the government's informant, had both the opportunity and the motive to induce appellant to join the conspiracy; that during July and August of 1973 Sylvester made attempts to enlist Imbruglia's participation in criminal schemes. Nevertheless, on appeal of the district court's refusal to present to the jury the issue of entrapment we concluded that the evidence in the record was insufficient to establish unreadiness, *United States v. Imbruglia*, 564 F.2d 87 (1st Cir. 1977) (without published opinion), *cert. denied*, 439 U.S. 842, 99 S.Ct. 134, 58 L.Ed.2d 141.[11]

The evidence of the Connolly report that appellant met with Sylvester and Searle one month before Searle testified he was introduced to appellant adds nothing material to evidence we have already judged as inadequate to demonstrate unreadiness. At most the evidence simply shows another occasion on which appellant met with Searle and Sylvester. Evidence of this single additional meeting, in the context of the entire record, is simply insufficient to raise the entrapment issue.[12] The strongest assertion appellant can muster is that had this evidence been available at trial, appellant's entrapment defense "might well have been viewed in a different and more favorable light." Yet we are not applying a standard of whether the new evidence "might" have affected the trial's outcome; more must be shown. Though this new evidence may possibly indicate solicitation, solicitation alone is not entrapment. Despite the new evidence we have no reasonable doubt about the conclusion of the district court that the evidence does not raise an entrapment defense.

Appellant's second argument for materiality is that the new evidence of the August 5 meeting, in conflict with Agent Searle's testimony, detracts from his credibility and reliability as a witness and thereby creates a "reasonable doubt." Contrary to appellant's contention[13] courts have expressed some uncertainty about granting new trials

---

10. Our decision in *Kadis v. United States*, 373 F.2d 370 (1st Cir. 1967) made it clear that entrapment was not to be bifurcated into sub-issues of inducement and predisposition (unreadiness). Rather, "we will look, singly, at the ultimate question of entrapment." *Id.* at 374.

11. Specifically, our earlier opinion stated: "While all this is evidence of solicitation, what is lacking is any evidence of unreadiness. *See Tzimopoulos v. United States*, 554 F.2d 1216 (1st Cir.). In fact, at every stage Imbruglia appears ready, willing and able to advance the enterprise." *United States v. Imbruglia*, No. 76–1152, slip op. at 6 (1st Cir. 1977).

12. If this August 5, 1973, meeting noted in the Connolly report was as crucial as appellant now argues, it is somewhat surprising some mention of it was not made during trial, for

certainly Imbruglia was aware of the meeting, even though at that time the Connolly report was not available to him.

13. The two cases relied upon by appellant, *United States v. Miller*, 411 F.2d 825 (2d Cir. 1969) and *United States v. Butler*, 567 F.2d 885 (9th Cir. 1976) provide little support for his argument for in neither of these cases did the courts acknowledge they were applying *Agurs* standards as we must here. In *Miller* the court concluded a motion for new trial must be granted "if there is a significant possibility that the undisclosed evidence might have led to an acquittal or a hung jury;" *Miller, supra*, 411 F.2d at 831. In *Butler* (a case in which defendants learned after trial that the government had promised the key witness against defendants that pending charges against him would be dismissed if he testified favorably to the prose-

when the *Agurs* "reasonable doubt" standard applies and the materiality of the newly discovered evidence rests upon its impeaching character.[14] One court has even held that before a new trial must be granted because of the prosecutor's failure to disclose purely impeaching evidence, not concerning a substantive issue, in the absence of a specific defense request, a defendant must demonstrate that the undisclosed evidence probably would have resulted in acquittal. *Garrison v. Maggio*, 540 F.2d 1271, 1273–74 (5th Cir. 1976), *cert. denied*, 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977). It is unnecessary, however, for us to decide whether to adopt the rule formulated by *Garrison v. Maggio*, because we conclude that when viewed as means of questioning Searle's credibility the Connolly report does not raise a reasonable doubt about the verdict's validity. During trial appellant had ample opportunity to attack Searle's credibility and bring his reliability as a witness into question. Adding evidence that Searle may have incorrectly remembered the date on which he first met appellant could have no material affect on the outcome of trial.

In conclusion, we note that the Court in *Agurs* particularly stressed the importance of the trial judge's evaluation of the newly discovered evidence, 427 U.S. at 113–14, 96 S.Ct. at 2402. The district judge, who presided at appellant's trial, reviewed appellant's newly discovered evidence and concluded it did not justify the granting of a new trial. His assessment deserves regard. We find no reason to reverse his judgment.

Accordingly, after oral argument and upon consideration of the parties' submissions, the judgment of the district court is AFFIRMED.

---

cution and against defendants) the court applied a new trial standard based upon *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) requiring new trial "wherever the nondisclosed evidence might reasonably have affected the jury's judgment on some material point, without necessarily requiring a supplementary finding that is also would have changed its verdict." *Butler, supra*, 567 F.2d at 890. In *Agurs*, however, the Supreme Court equated its *Giglio* standard with the standard of materiality applicable to cases of prosecutorial misconduct by use of perjured testimony. *Agurs*, 427 U.S. at 103, n.9, 96 S.Ct. at 2397 n.9. Suffice it to say that in *Miller* and *Butler* the courts applied new trial standards more favor-

able to the defendant-appellant than the *Agurs* standard which governs this case.

14. *See United States v. Strahl*, 590 F.2d 10, 13 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979) and cases cited therein. In *United States v. Shelton*, 588 F.2d 1242, 1248 (7th Cir. 1978) the court found that "Impeachment evidence, even that which tends to further undermine the credibility of the key Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist where that evidence is cumulative or collateral." (Citations omitted.)