**UNITED STATES, Appellee,**

v.

**Carlos Javier REYES, Defendant, Appellant.**

**No. 90–1257.**

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1990.

Decided Feb. 22, 1991.

Lisa Smyth (Court-appointed), with whom Robert W. Walker, Concord, Mass., was on brief, for appellant.

Dina Michael Chaitowitz, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

BREYER, Chief Judge.

A jury convicted Carlos Javier Reyes, the appellant, of possessing cocaine with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Subsequently, Reyes claimed that the government possessed two items of information favorable to him that it did not disclose to the defense prior to trial, namely: 1) an oral statement by the government's confidential informant (the CI) to a police officer that the CI and defendant had attended a meeting with drug dealers in Revere; and 2) a white business card with the CI's phone number found in appellant's wallet. Reyes asked the district court to grant a new trial. The district court denied the request and Reyes appeals that denial.

We shall assume, but purely for the sake of argument, that the two items of potential evidence were in fact "favorable to the accused" and that the government should have known as much. *See Brady v. Mary-* *land*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Bagley*, 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985). Still, Reyes is entitled to a new trial only if the evidence was "material," which is to say

> only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. Having read the entire transcript of the trial, we cannot find any such "reasonable probability" here, and we therefore affirm the district court's determination. We shall briefly explain why.

1. *The basic evidence.* Reyes conceded at trial that on November 17, 1987, he had delivered two kilograms of cocaine to the CI at the Arsenal Mall, in Watertown, where DEA agents arrested him. He claimed entrapment, introducing evidence designed to show that the CI "instigated" the offense and that "he had no previous disposition to commit it." *United States v. Imbruglia*, 617 F.2d 1, 5–6 (1st Cir.1980). His evidence, for the most part, consisted of 1) Reyes's own testimony that the CI had badgered him into selling cocaine by phoning him perhaps 30 or 40 times and promising him money and a job, that he had never sold any drugs before in his life, and that he tried to avoid selling drugs to the CI by arranging for the CI to buy drugs from others; 2) testimony of a friend and a relative who confirmed that the CI had called Reyes often; and 3) testimony of another friend that Reyes had told her the CI was trying to get him to deal drugs and that he did not want to do it.

The government countered the entrapment claim, showing "predisposition," for example, through 1) testimony of Reyes's friend Martinez about how Reyes tried to organize the sale of drugs to the CI and about Reyes's previous experience selling drugs as a small time drug dealer; 2) that Reyes often initiated contacts with the CI by calling the CI's beeper number and that

then the CI would call Reyes back; 3) the conceded fact that large drug dealers had trusted Reyes to deliver two kilograms of cocaine to the CI; 4) that Reyes was being paid by these large dealers to deliver the cocaine; and 5) significant conflicts in Reyes's own testimony, elicited on cross-examination. We must judge the "materiality" of the two "nondisclosed" items of evidence "in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

2. *The statement about the Revere meeting.* After the trial concluded, the Assistant United States Attorney told defense counsel that a DEA agent had recently given him new information about the Revere meeting. Specifically, the CI had in fact told the agent that the CI had attended a meeting with Reyes and others in Revere sometime before the Watertown drug transfer took place. Reyes says that, had he only known about the CI's statement, he would have made more of a point of the meeting at trial. In his view, the fact of the meeting bears out his contention that he tried to introduce the CI to other drug dealers, which, in turn, shows he did not want to become involved in the sale himself. He adds that the U.S. Attorney used his inability to prove the existence of the meeting against him, for the U.S. Attorney told the jury,

> counsel said you have got to decide between the defendant and [the CI] ... who is telling the truth and who isn't, and he gave you an example of the Revere incident. This incident supposedly took place at the dog track. [The CI] ... said that never happened. The Revere incident never happened because if it had happened, the investigation wouldn't have gone the way it did.

In our view, despite the prosecutor's statement, the missing information (namely the CI's statement to the DEA agent that there had been some sort of meeting in Revere) does not create a "reasonable probability" of a different trial outcome. Our knowledge of that statement does not "undermine" our "confidence in the outcome of the trial" for the following combination of reasons.

First, the missing information has harmful, as well as helpful, probative tendencies. On the one hand, had the defense (or the prosecutor) known about the information, the prosecutor would not have made the statement quoted above. Moreover, the information tends to corroborate Reyes's story that the CI badgered him so much that he tried to find other people to sell the CI the drugs he wanted. On the other hand, the information also shows that Reyes associated with important drug dealers, thereby suggesting familiarity with the drug trade. And, in showing an effort on his part to obtain drugs for the CI, the information may tend to show a willingness, and a predisposition, to commit the later drug crime. Finally, the missing information tends to corroborate only that the meeting took place, not what was *said* at the meeting. Yet, it is primarily what Reyes testified was said at the meeting—that Reyes wanted the CI to buy from these other dealers and leave him alone—which may tend to show Reyes's lack of predisposition.

Second, Reyes introduced a considerable amount of other evidence relevant to his reluctance to become involved, including evidence of the CI's "badgering." The fact of the Revere meeting, in context, was at best a cumulative one, helping only marginally to sustain Reyes's claim.

Third, the trial transcript underlines the comparative unimportance of the information since it suggests that Reyes himself did not care particularly whether or not the government admitted that the Revere meeting had taken place. For one thing, no government witness denied that the meeting had taken place—Reyes's testimony of the occurrence of the meeting was not directly contradicted. For another thing, Reyes did not take advantage of his right and opportunity to cross-examine the CI about the meeting. The CI might well have admitted its existence. Or, had he not done so, Reyes might have called other witnesses to confirm the fact of the meeting. Finally, Reyes did not object to the prosecutor's remarks quoted above. That

failure, in context, may suggest that Reyes took the remarks primarily as related to the *content* of the statements made at the meeting rather than as a reference to a dispute about the meeting's existence.

3. *The white card.* The detective who arrested Reyes testified that, after his arrest, during a tape-recorded interview, Reyes said that he had written the CI's beeper number (in the detective's words) "on a yellow piece of paper and that he had chewed the paper up." Reyes testified he did not remember about the yellow piece of paper, but that he had given the detective a white card with the number. The detective, in rebuttal, said he had reviewed the tape and Reyes had indeed said he had chewed up a yellow piece of paper with the beeper number. The prosecutor, in closing argument, said that the

> piece of evidence in and of itself is not, I suggest, significant to building the substantive case, but it tells you something about his predisposition. Tells you something about his attitude. He is in the mall chewing the piece of yellow paper with the beeper number on it in case anything goes wrong.

Reyes says that, after the jury retired for its deliberation, the government returned his billfold to him—a billfold that it had taken when he was arrested. He then found in the billfold a white card with the CI's beeper number. He argues that this evidence, too, was, in context, "favorable to the defendant," and the government should have given it to him sooner.

We are willing to assume that the card was "favorable" evidence. It might have helped show that Reyes had just made a mistake when he talked about the yellow piece of paper, that his statement about "chewing up" the paper was wrong (or that, as he now claims, he had just said he was "chewing on" the paper), and that, consequently, the statement does not show quite as much "consciousness" of guilt as the prosecutor implied, and that he, therefore, was more likely to have been entrapped. In our view, however, the chain of inferences we have just listed is weak, the issue was peripheral to the major is-

sues at trial, and ultimately, we think it most unlikely that the presence of the card would have made a difference to the outcome.

The evidence of the card and the Revere meeting do not "undermine our confidence in the outcome" of the trial or in its fairness, whether one views them together or separately. Consequently, the judgment of the district court is

*Affirmed.*