NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1336
_____

EVANGELIA MINTO,
                                        Appellant

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT

_____

On Appeal from the United States District Court for the District of New Jersey
(D.C. Civ. Action No. 3:16-cv-07084)
District Judge: Hon. Anne E. Thompson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2018
_____

Before: GREENAWAY, JR., BIBAS and FUENTES, *Circuit Judges*.

(Opinion Filed: March 14, 2019)

_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Ms. Evangelia Minto appeals from the District Court's order granting summary judgment in favor of the United States Office of Personnel Management ("OPM") and its order denying her cross-motion for summary judgment. For the following reasons, we will affirm.

## I.  Factual and Procedural Background

This case arises out of a surgical procedure Ms. Minto had for a spinal injury, and the subsequent refusal to cover the insurance claim for said surgery by a federally-contracted insurance carrier. The District Court found that Ms. Minto was insured by her husband's health insurance plan with the National Association of Letter Carriers ("NALC") through Federal Employee Health Benefits ("FEHB"). **App. 4**. All FEHB carriers must provide services that OPM finds an individual is entitled to under the terms of his or her plan. *Id.***; 5 U.S.C. § 8902(j).** Ms. Minto's plan through NALC ("the Plan") provided coverage for only "medically necessary" services, medications, and procedures. App. 177–78. The Plan defines medical necessity as services or treatments that NALC determines:

> Are appropriate to diagnose or treat your condition, illness, or injury; [] Are consistent with standards of good medical practice in the United States; [] Are not primarily for the personal comfort or convenience of you, your family or your provider; [] Are not related to your scholastic education or vocational training. . . .

App. 182. The Plan brochure expressly notes that medical necessity is not guaranteed by the fact that a medical provider has "prescribed, recommended, or approved" a particular course of treatment or service. App. 183. The plan also provides NALC with the right to

2

pursue independent medical review of an insurance claim to determine whether the particular treatment or procedure meets the standards and requirements of the Plan. **App. 181.**

After two undisputed medically necessary procedures to fuse her C4–6 vertebrae and foster bone growth between the C6 and C7 vertebrae in 2008 and 2013, Ms. Minto sought a second opinion from Steven Paragioudakis, M.D. ("Dr. Paragioudakis"). **App. 78.** After examining Ms. Minto on October 13, 2014, Dr. Paragioudakis's written assessment noted "pseudoarthrosis[1] with instability at C6–7 causing severe neck pain and radiculopathy." App. 81. After performing tests, Dr. Paragioudakis concluded that Ms. Minto had "pseudoarthrosis and adjacent level degeneration" in his preoperative notes on October 29th. App. 93. He also recorded in his notes that she would "undergo an anterior cervical revision with removal of hardware at C4–6 and instrumented fusion at C3–4, C6–7." App. 93–94. Dr. Paragioudakis performed Ms. Minto's surgery on October 31, 2014, and composed a postoperative report that documented pseudoarthrosis as one of Ms. Minto's preoperative diagnoses. **App. 96.**

On February 4, 2015, NALC acknowledged the insurance claims submitted for Ms. Minto's third surgery. NALC, utilizing the review procedure set out in the Plan, contracted the medical review service Maximus Federal Services, Inc. ("Maximus"). Maximus has an independent board-certified orthopedic surgeon with no affiliation to Maximus, the providers, patient, or NALC, to perform these types of reviews and

---

[1] **Alternative spelling: pseudarthrosis.**

determine whether the surgery was medically necessary to treat Ms. Minto's condition. If medically necessary, the Plan would provide coverage. **App. 147**.

On February 25, 2015, Maximus sent NALC a completed audit report concluding that based on the independent medical reviewer's finding the procedure was not medically necessary, having found no evidence of pseudoarthrosis within the information and documentation provided.[2] **App. 190–91.** NALC alerted Dr. Paragioudakis and his team that the procedure was not medically necessary under the Plan and would not be covered. NALC also informed Dr. Paragioudakis that he could submit additional documentation. **App. 184.**

On April 18, 2015, Dr. Paragioudakis provided additional documentation, including a CAT scan, MRI report, and his post-operative report. NALC sent the additional documentation to Maximus. **App. 7.** On June 26, 2015, Maximus sent a new audit report ("second audit report") to NALC concluding once again that the surgery was not medically necessary given Ms. Minto's condition. **App**. **215–16.** Maximus's medical reviewer cited to peer research and articles for this conclusion, discussing that motion analysis is a better indicator of pseudoarthrosis than CT scans (utilized by Dr. Paragioudakis) because it is less subjective and more predictive than imaging studies that fail to detect gross motion across fusion sites. **App. 215.** On July 13, 2015, NALC

---

[2] When Dr. Paragioudakis originally submitted insurance claims to NALC on behalf of Ms. Minto's surgery, he did not submit his preoperative or postoperative notes with his submission, nor did he provide any medical test results. **App. 190–91.**

issued a letter with these results confirming its initial denial of coverage and informing Ms. Minto of her right to appeal NALC's decision to OPM. **App. 72.**

On October 9, 2015, Ms. Minto appealed to OPM. OPM requested an explanation from NALC and then sought an advisory opinion ("third audit report") from an independent medical reviewer through the medical review service, IMEDICS. **App. 8.** Immediately prior to the appeal on October 6, 2015, Dr. Paragioudakis submitted a letter to NALC attesting to the medical necessity of the procedure on Mrs. Minto's behalf. **App**. **105**. Additionally, Dr. Paragioudakis dictated an addendum to the CAT scan report on October 8, 2015—almost a year after the original scan, report, and review—noting "findings are suspicious for pseudathrosis at C6–C7." App. 85. OPM's independent medical reviewer examined the record (which included the addendum to the CAT scan) and noted that there was a lack of quality literature and evidence finding surgery appropriate for the type of pain Ms. Minto had experienced. The medical reviewer also found that there was no correlation between Ms. Minto's physical exam findings or Ms. Minto's CT scan with the dermatomal pattern of pain in her upper extremities. **App. 499–500.**

OPM issued its final opinion letter on January 29, 2016, upholding NALC's repeated finding that the procedure was not medically necessary under the terms of the Plan. **App 1–2.** Ms. Minto filed suit against OPM in federal district court seeking review of OPM's final decision. OPM and Ms. Minto opposed and cross-moved for summary judgment. In support of Ms. Minto's cross-motion for summary judgment, Dr. Paragioudakis submitted a declaration, which Ms. Minto asserts was only submitted to

"explain technical terms of complex subject matter involved in the agency action." Pls.' Cross Mot. Summ. J. at 3 n.1; App 806–10. The District Court declined to review the declaration because it found that the record OPM compiled was exceedingly complete. Further, there was "adequate information in federal case law to corroborate the essential medical terminology." App 15. The District Court granted OPM's summary judgment motion and denied Ms. Minto's cross-motion.

## II.     Jurisdiction and Standard of Review

We have appellate jurisdiction under 28 U.S.C. § 1291. We review *de novo* the District Court's grant of summary judgment in a case brought under the Administrative Procedure Act ("APA") 5 U.S.C. § 701 et. seq., and apply the applicable standard of review to the underlying agency decision. *Pennsylvania Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 146 (3d Cir. 2012). The APA requires courts to set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that was conducted "without observance of procedure required by law." *Id.* (quoting 5 U.S.C. § 706(2)(A) & (D)). Agency action may be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.* 463 U.S. 29, 43 (1983). "The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency. *Id.* When "applying the appropriate [APA]

6

standard of review to the agency decision" our review is limited to the administrative record. *Concerned Citizens Alliance, Inc. v. Slater*, 176 F.3d 686, 693 (3d Cir. 1999) (internal quotations omitted). "We must insure that, in reaching its decision, the agency examined the relevant data and articulated a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Prometheus Radio Project v. FCC*, 373 F.2d 372, 389–90 (3d Cir. 2004) (quoting *State Farm*, 463 U.S. at 43).

### III.    Analysis

Ms. Minto argues that the District Court erred when it (1) refused to consider the declaration of her surgeon, Dr. Paragioudakis; and (2) denied her motion for summary judgment and granted summary judgment to OPM, concluding that OPM appropriately denied health insurance coverage for her surgery performed by Dr. Paragioudakis. For the following reasons, we will affirm the District Court's grant of summary judgment to OPM and denial of Ms. Minto's cross-motion seeking summary judgment.

### A.  Exclusion of Dr. Paragioudakis's Declaration

Ms. Minto argues that the District Court erred by refusing to consider Dr. Paragioudakis's declaration. As a preliminary matter, "generally, judicial review of an agency action is limited to review of the administrative record." *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). Supplementation of the record is rare, and if it does occur, happens at the discovery stage. The District Court declined to consider the declaration because judicial review of OPM's decision is limited to the administrative record that was before the agency, and the District Court found the OPM record to be

7

exceedingly complete, with "adequate information in federal case law to corroborate the essential medical terminology." App. 15.

Ms. Minto argues that she sought to supplement the administrative record with this declaration, not to "seek to offer new medical records" but rather "only to explain the medical terminology and references already in the record." Appellant's Br. 11 (internal quotes omitted). To support her argument that Dr. Paragioudakis's declaration should be included, Ms. Minto cites to cases that rarely allow (and do not require) supplementation of the record in limited exceptions *during discovery. See, e.g.*, *id.* ("In addition, discovery may be permitted if supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action."). Although such supplementation has been allowed during discovery, it has not been allowed in support of a cross-motion for summary judgment, where movants have alleged all necessary facts are in the record such that they should be granted judgment as a matter of law. *See, e.g., Hodel*, 840 F.2d at 1436. (Noting only certain circumstances may justify expanding review beyond the record or permitting discovery).

Assuming *arguendo* that a Court could allow supplementation of the record at the summary judgment stage like it does at the discovery stage, it is still not required to do so. *See Id.* at 1436 ("[C]ertain circumstances *may* justify expanding review beyond the record or permitting discovery." (emphasis added)). Oddly, Ms. Minto undermines the need to include this declaration in her brief where she notes, "[N]othing in [Dr. Paragioudakis's] declaration could be considered new information to the physicians that reviewed this matter for OPM." App. 13. Although Ms. Minto argues that the

8

declaration merely clarifies medical terminology, in actuality it sets forth additional legal arguments, not purely medical definitions or even medical observations, in support of her case.  **App. 807–09.**  Ms. Minto is not allowed to include a substantive submission where her doctor attempts to supplement the record with both factual and seemingly legal arguments.  The declaration as such is beyond the purview of the administrative record to which the reviewing court is limited.  For all of the foregoing reasons, the District Court was well within its discretion to deny consideration of the declaration.

**B.  Sufficiency of Evidence underlying OPM's Decision to Deny Coverage**

Ms. Minto argues that the decision to deny health benefits coverage was not supported by the evidence before the Agency, and thus, the District Court erred in granting summary judgment.  **Appellant's Br. 19.**  She contends that the "conclusions of three independent medical professionals within the administrative record" on which the District Court relies, cannot serve as sufficient evidence for its decision.  App. 17**; Appellant's Br. 19**.  As the District Court noted, OPM's decision need only establish a "rational connection between the facts found and the choice made" by the agency. *Prometheus Radio Project*, 373 F.2d at 389–90**; App. 10**.  The reviewing court is limited to "the administrative record [that was] already in existence before the agency, not some new record made initially in the reviewing court or post-hoc rationalizations made after the disputed action." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)) (internal quotations omitted).  As OPM's decision to deny coverage is rationally related to the facts presented in the record, OPM's decision is

9

correct.

Ms. Minto contends that the first audit report that resulted in denial of benefits was not based on medical opinions. This is literally correct, as the first report notes, "there were no medical records provided prior to surgery or from follow-up services . . . ." App. 112. Given what was provided to the independent medical reviewer, the reviewer reached the correct conclusion that "the need for revision surgery had not been established," and provided Ms. Minto the opportunity to appeal. App. 113.

Ms. Minto then asserts that the second audit report discounted Dr. Paragioudakis's direct observation of pseudoarthrosis and that the third audit report was incorrect in concluding that her complaints of pain were resolved prior to Dr. Paragioudakis's surgery.[3] **Appellant's Br. 16, 19.** There is no evidence that the second audit report ignored Dr. Paragioudakis's observation of Ms. Minto's condition on the operating table. As a preliminary matter, the record provides no statement by Dr. Main that his initial surgery had failed, nor any statement by any of the doctors that conducted her x-ray, CAT scan, or MRI that there was pseudoarthrosis present. **App. 10–12.** Although Dr. Paragioudakis's observation of the condition on the operating table is relevant, it was dictated after he elected to conduct the surgery, and the condition had not been verified or supported by any other physician's opinions or notes pre-surgery. **App. 12.** OPM's

---

[3] Additionally, Ms. Minto claims that the other independent reviews by OPM are unsubstantiated because the reviewer never examined Ms. Minto or her CT, MRI, or x-ray images. **Appellant's Br. 16**. However, these claims are without merit. The report notes direct review of x-ray films, a CT scan, and an MRI by the independent medical reviewer, in addition to the review of medical notes by Ms. Minto's treating physicians. App. 498.

independent medical reviewer analyzed the record that was before OPM when it rendered its decision to deny benefits, which took into consideration Dr. Paragioudakis's observation. Though Dr. Paragioudakis's observation was considered, physical observation of a condition by Dr. Paragioudakis during surgery cannot serve to counter a significant amount of medical documentation and literature. Given the medical literature available, the independent reviewer rationally determined that surgery was not necessary to treat Ms. Minto's condition.

Finally, Ms. Minto's argument that the third audit report incorrectly stated her complaints of pain were resolved prior to Dr. Paragioudakis's surgery is not supported by Dr. Paragioudakis's notes or the report itself. In his October 13, 2014 exam notes, Dr. Paragioudakis observed that "Ms. Minto was experiencing left shoulder and arm pain with weakness." App. 5, 78. However, on the October 29, 2014 preoperative appointment, Dr. Paragioudakis concluded that both of Ms. Minto's right and left upper extremities had full, *painless* range of motion. **App. 544.** Additionally, his assessment of Ms. Minto still noted "intractable neck pain." App. 543. Ms. Minto's claim that the third audit report noted she was free of pain is incorrect because the report made specific mention of Ms. Minto's pain, and made the decision that her surgery was not medically necessary as surgery was not an accepted treatment for her pain. *See* App. 498. The third audit report establishes that "surgical care for axial neck pain alone is not recommended in the literature as there is a lack of high quality evidence." App. 499.

## IV. Conclusion

Each of the three independent medical reviewer's reports acknowledged review of

11

all available medical reports and documentation available at the time of each report. Each report also acknowledged all information on record in light of medical literature and peer reviewed publications. **App. 498**. OPM did not fail to consider an important aspect, nor did they offer an explanation for its decision that runs counter to the evidence. Dr. Paragioudakis's visual observation of Ms. Minto's alleged psuedoathrosis was taken into consideration by OPM's medical reviewer, but his declaration explaining terminology was rightfully excluded from consideration as it was not in the administrative record in existence before the agency. Ms. Minto's pain was acknowledged by the third audit report, which did not suggest surgical care to alleviate it, based on peer-reviewed literature. As there was a "rational connection between the facts found and the choice made," there was sufficient evidence to support the grant of summary judgment to OPM. *Prometheus Radio Project v. FCC*, 373 F.2d at 389–90 (internal citations omitted). For the foregoing reasons, we will affirm the District Court's grant of summary judgment.